Waterhouse's Estate.

Argued April 23, 1932. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

424

*Henry Spalding*, with him *Edward W. Fell*, for Charlotte E. Jenkins, appellant.—The decision of the court below in this case is an obvious effort to get away from the rule laid down in Jones v. Trust Co., 292 Pa. 149, and is inconsistent with the decisions of the court below in Burton's Est., 12 Pa. D. & C. 605, and Noblit's Est., 15 Pa. D. & C. 203.

Where a corporation gives to the trustees of an estate the right to subscribe for new stock, and they avail themselves of such offer, the benefit resulting therefrom must be apportioned in the same manner as an extraordinary stock dividend would be; that is, there should be allotted to the corpus of the trust sufficient thereof to maintain unimpaired the intact value of the stock held by it, and the life tenant should receive the balance, because it represents corporate earnings which accumulated after he became entitled to all dividends at any time thereafter payable out of such accumulations: Jones v. Trust Co., 292 Pa. 149, page 153. This being the law as decided by this court, it is not incumbent upon us to defend the theory. There is certainly no logical reason for differentiating in the method of apportionment between the case of a stock dividend and the case of the issuance of warrants.

The method of apportioning stock dividends has been fixed and understood since Earp's App., 28 Pa. 368.

In the present case the auditing judge, although admitting that Jones v. Integrity Trust Co., supra, settled the question that the proceeds of the sale of rights must be apportioned, does not follow the method therein outlined, and his decision and his reasoning throughout his adjudication is, in effect, a protest against the apportionment of the proceeds of warrants. He reasons that as the price of stock before the issuance of rights is equal in market price to the stock ex-rights, plus the rights, that there is therefore no gain to the owner. But this court has repeatedly said that market value is of no importance and has no place in the calculation.

There is no essential difference between a stock dividend and the issuance of rights to subscribe and no logical reason why they should not be apportioned by the same method: Earp's App., 28 Pa. 368.

There is every reason for maintaining a rule of law which will prevent the great enhancement of trust estates by the accumulation of undeclared and concealed earnings at the expense of the life tenants, and none why the ultimate remainderman should receive not only what the testator left him, but all undeclared earnings, enhancements and speculative profits on not only the shares which remain in the trust but also on all shares and rights issued by the corporation to its stockholders.

If the company declares a dividend, whether of stock or cash, partially out of earnings and partially out of principal, a court of equity, made cognizant of the fact, will apportion the dividend, between the life tenant and the remainderman, in such a way as to maintain intact the principal of the estate, giving only the balance to the life tenant.

*Charles Myers,* with him *Barnes, Biddle & Myers,* for Girard Trust Company, executor of will of Bessie V. Waterhouse, deceased, appellant.—The intact value as

it existed at the time the trust began must be maintained and cannot be reduced by extraordinary losses: Dickinson's Est., 285 Pa. 449.

"The prima facie standard of measurement of intact value of trust estates, the income of which is to be paid to a beneficiary, with remainder over, is the book value; and this standard remains fixed unless it can be established that the elements making up the book value are not true values:" Noblit's Est., 15 Pa. D. & C. 203; Baird's Est., 299 Pa. 39.

In Nirdlinger's Est., 290 Pa. 457, this court held that the rule as to apportionment of extraordinary dividends applies where the trustee sells stock and receives a price greater than the value of the stock at the date of the death of the testator, the profit being due to an accumulation of income: McKeown's Est., 263 Pa. 78; Graham's Est., 296 Pa. 436.

It is submitted that the proceeds of the sale of rights should be treated as a stock dividend and divided among the life tenants in the proportion of the earnings which were accumulated during the life tenancies: Jones v. Trust Co., 292 Pa. 149; Thompson's Est., 262 Pa. 278.

*Jerome J. Rothschild,* of *Fox, Rothschild, O'Brien & Frankel,* with him *Theodore S. Paul,* for appellee.—It is contended on behalf of the appellee that, with respect to the proceeds of the sale both of stock rights and the sale of stock, only such portion of the proceeds realized by the trustee as represents earnings accumulated since the inception of the trust and not declared as dividends, should be awarded to the life tenants and that the balance including any portion of such proceeds representing the value of the stock rights or the stock resulting from enhanced market or speculative value of the stock in excess of book value and due to intrinsic worth or earning power, should be awarded to corpus: McKeown's Est., 263 Pa. 78; Earp's App., 28 Pa. 368; Jones v. Trust Co.,

292 Pa. 149; Packer's Est., 291 Pa. 194; Graham's Est., 296 Pa. 436.

The rule of apportionment should be the same in the case of sale of stock rights as in the case of sale of stock.

In the instant case the proceeds of all sales of stock rights included realization of much more than earnings.

On the sale by a trustee of shares of stock or rights to subscribe to stock, the proceeds are presumptively principal and the burden is on the life tenant laying claim to them, to show what portion thereof, if any, represents realization of earnings accumulated during the life tenancy. In the instant case such proof is lacking and therefore all such proceeds should be awarded to corpus and all the exceptions dismissed: McKeown's Est., 263 Pa. 78; Nirdlinger's Est., 290 Pa. 457; Dickinson's Est., 285 Pa. 449; Graham's Est., 296 Pa. 436; Packer's Est., 291 Pa. 194; Chauncey's Est., 303 Pa. 441.

OPINION BY MR. JUSTICE KEPHART, May 26, 1932:

This appeal involves the apportionment, between the life tenant and the remaindermen in a trust estate, of the proceeds received from the sale of stock and stock rights. Because of appellants' confusion with respect to our rules governing the questions involved, it will be necessary to briefly summarize what has been heretofore decided.

The value of a trust estate, where its income is paid to life tenants with remainder over, is determined as of the time the testator dies and is called intact value. It is so named because that *value is to be kept intact for remaindermen* in the various subsequent distributions of income that might impair it. It was early stated that intact value includes par value of stock when par has been paid, plus any accumulations at the date of death,[1] but, prima facie, intact value is book value.[2] Intact value

---

[1] Earp's App., 28 Pa. 368.

[2] Baird's Est., 299 Pa. 39, 42.

may be increased by stock purchases, contributed surplus or any other capital increase not attributable to earnings,[3] and it is subject to capital losses.[4] The burden of lowering or raising an intact value thus established lies on the party asserting it.[5]

The income from the estate, unless otherwise determined by will, is distributed as follows:

[a] Ordinary cash or scrip dividends coming to it belong to life tenants regardless of how soon after testator's death they are declared by the company whose stock is held in the corpus. They are not, in the absence of unusual circumstances, apportionable between life tenants and remaindermen.[6]

[b] Extraordinary dividends, commonly called stock dividends, are distributed and apportioned as follows. The presumption is that an extraordinary stock dividend is from earnings and belongs to the life tenant.[7] Earnings include not only the profits in the regular business but also those from miscellaneous sources.[8]

In the distribution of a stock dividend the "intact value" must be preserved. When it appears that the distribution of a stock dividend to the life tenant will impair the intact value of the trust estate by reducing it, then there must be an apportionment between the life tenant and the remainderman,[9] so as to preserve the intact value of the corpus of the estate,[10] plus any increase in that value through share purchases, or from contrib-

---

[3] Dickinson's Est., 285 Pa. 449, 453; Packer's Est. [No. 1], 291 Pa. 194, 197; Jones v. Integrity Trust Co., 292 Pa. 149.

[4] Dickinson's Est., supra; Packer's Est., supra.

[5] Baird's Est., supra.

[6] McKeown's Est., 263 Pa. 78, 85; Nirdlinger's Est., 290 Pa. 457, 462.

[7] Earp's App., supra; Graham's Est., 296 Pa. 436; Chauncey's Est., 303 Pa. 441, 446; McKeown's Est., supra.

[8] Chauncey's Est., supra.

[9] Earp's App., supra; Chauncey's Est., supra; McKeown's Est., supra; Graham's Est., supra; Waterman's Est., 279 Pa. 491.

[10] Flaccus's Est., 283 Pa. 185; Nirdlinger's Est., supra.

uted surplus or any proper capital increase,[11] and less any decrease for capital losses.[12]

Where an extraordinary stock dividend is made from increased capital assets not chargeable to earnings, such as contributed surplus and the like, the stock dividend belongs to the corpus.[13] The burden of proving that the intact value of a trust estate is or will be diminished, and that an extraordinary stock dividend or part of it belongs to the corpus, is on the trustees or remainderman.[14]

[c] Where stock that produces income owned by the estate is sold for a price greater than the intact value [as defined and considered above] and such greater price is due to an accumulation of income, the proceeds are apportionable; that is, so much of the proceeds as necessary to preserve the intact value [as defined] goes to the trustees for the corpus, and only so much of the balance that represents income goes to the life tenant.[15]

But where the greater value is due to the stock's earning power, good will, or its intrinsic, speculative, or enhanced market value, all the proceeds are part of the corpus and belong to the remainderman; the increase is capital gain.[16]

The presumption is that the proceeds from the sale of stock belong to the corpus of the trust and the burden of proving that they do not rests on the person asserting a claim to them.[17]

[d] Proceeds arising from the sale of stock rights should be distributed in the same manner and have the same presumptions following as in the sale of stock.

---

[11] Dickinson's Est., supra; Chauncey's Est., supra.

[12] Dickinson's Est., supra.

[13] Chauncey's Est., supra.

[14] Earp's App., supra; Graham's Est., supra; Chauncey's Est., supra; McKeown's Est., supra.

[15] McKeown's Est., supra; Nirdlinger's Est., supra.

[16] See Nirdlinger's Est., supra, and authorities cited at page 479.

[17] McKeown's Est., supra; Nirdlinger's Est., supra.

430

They are a species of stock. This is the main question here involved.

We have held[18] that proceeds from the sale of stock rights, " . . . . . . must be apportioned in the same manner as an extraordinary stock dividend would be; that is, there should be allotted to the corpus of the trust sufficient thereof to maintain unimpaired the intact value of the stock held by it, and the life tenant should receive the balance, because it represents corporate earnings which accumulated after he became entitled to all dividends . . . . . ." But in the case cited[19] we considered the sale of stock rights in reference to intact value and accumulated earnings only, but decided nothing as to stock rights sold at a profit due to the stock's earning power, good will, or its intrinsic or speculative value in the market. The benefits resulting from the sale of stock rights under the latter circumstances should be apportioned in the same manner as in the sale of stock. In all cases, in determining the share which the life tenant is to receive based on apportionment, his share is limited to such an amount as is attributable to income or can be fairly included therein.[20] It does not include increases of capital assets not due to earnings, and in the sale of stock rights earnings do not include such items as speculative value, enhanced market value, or the stock's earning power.

When the trustees sell stock rights, the presumption is that the proceeds derived therefrom represent capital assets of the estate, and the burden of showing the contrary rests on those who assert a claim to the fund or part of it.

In the present case, the burden of proof rested on the life tenants. They failed to meet this burden and the court below properly decreed the proceeds, from the sale

---

[18] Jones v. Integrity Trust Co., supra.

[19] Supra, note 18.

[20] Chauncey's Est., supra.

of stock rights, to the corpus of the estate, making, however, an allowance of such of the proceeds as represent income to the life tenants.

The remaindermen took an appeal, entered No. 220, January Term, 1932, but stated at the bar of the court that if the appeals of the life tenants were dismissed, they would be satisfied to have their appeal dismissed. We accordingly make the order.

The decrees of the court below in Nos. 215, 218, 220, January Term, 1932, are affirmed; cost to be paid by appellee.