**SOLES v. GRANGER, Collector of Internal Revenue.**

**No. 9752.**

United States Court of Appeals
Third Circuit.

Argued Jan. 4, 1949.

Decided April 11, 1949.

Elizabeth B. Davis, of Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., George A. Stinson and Ellis N. Slack, Sp. Assts. to Atty. Gen., and Owen M. Burns, U. S. Atty., and Elliott W. Finkel, Sp. Asst. to U. S. Atty., both of Pittsburgh, Pa., on the brief), for appellant.

Thomas J. McManus of Pittsburgh, Pa. (W. A. Seifert and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN, and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

This appeal is taken from the judgment of the United States District Court for the Western District of Pennsylvania in favor of T. F. Soles, as Executor, ("Taxpayer"), in the amount of $10,201.39, with interest, representing a refund of estate taxes.[1]

Two questions are presented: (1) Whether a stock dividend results where a corporation increases its capital account by a transfer from surplus and pursuant thereto effects a split-up of its common stock; and (2) whether a proportionate share of stock received by trustees of a testamentary trust in a recapitalization, decedent having been an income beneficiary of such a trust, is includible in decedent's gross estate, under Section 811(a) of the Internal Revenue Code.[2]

The decedent, Terrissa C. Soles, was one of the income beneficiaries of a trust created by will of Terrissa C. McCune,

---

[1] The opinion of the District Court, 1948, is reported in 76 F.Supp. 418.

[2] "Sec. 811. Gross estate.

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

"(a) *Decedent's interest.* To the extent of the interest therein of the decedent at the time of his death; * * *.
26 U.S.C.A. § 811.

Treasury Regulations 105, promulgated under the Internal Revenue Code:

"Sec. 81.13. *Property of decedent at time of death.*—It is designed by the foregoing provisions of the Internal Revenue Code that there shall be included in the gross estate all property of the decedent, whether real or personal, tangible or intangible, the beneficial ownership of which was in the decedent at the time of his death, except real property situated outside the United States.

\* \* \* \* \*

"Interest and rents accrued at the date of the decedent's death and *dividends declared to stockholders of record on or before the date of the decedent's death and not collected at such date constitute part of the gross estate.*" (emphasis supplied)

who died June 8, 1934. The trust was for a ten-year term and the decedent had a one-third interest therein. Decedent died December 4, 1940, during the life of the trust.

The instant controversy arises out of the fact that the trust numbered among its assets 48 shares of stock of the Hookless Fastener Co., Inc. ("Corporation").[3] Corporation's Board of Directors on August 5, 1937, retired a number of shares held as treasury stock and transferred a substantial amount from surplus to capital account with the result that the stated value of the stock was increased from $900 to $1250 a share.[4] On October 5, 1937, the shares of Corporation were split up 250 to 1 upon approval by the stockholders of a proposal made by the directors at the August 5th meeting. As a result, the trust received 12,000 shares of the new stock in exchange for the old 48 shares.[5]

Since these events took place during the period when the decedent was an income beneficiary of the residuary trust, the Commissioner determined that (1) there had been a stock dividend distribution; (2) the proportionate part of the new stock attributable to the amount transferred from surplus belonged to the tenants of the trust under the Pennsylvania Rule of Apportionment; and (3) decedent's share thereof was includible in her gross estate under Section 811(a) as property belonging to it although no apportionment ever took place.[6] According to the Commissioner, the transfer from earned surplus to capital and the increase in the shares of stock which included surplus were the equivalent of a declaration of a dividend of stock to the extent of one-third of 70/250ths of 12,000 shares or to 1,120 shares of common stock which should have been paid over to the decedent as a life tenant.[7]

[3] The name of the company was subsequently changed to Talon, Inc.

[4] Prior to August 5, 1937, the authorized capital stock of the Corporation consisted of 4,000 shares without par value but with a stated capital value of $3,600,000 ($900 stated value per share). Of the authorized capital stock, 3906 shares with a stated value of $3,515,400, were outstanding and 94 shares were held as treasury stock. On August 5, 1937, the Board of Directors of the Corporation, at a special meeting, retired and cancelled the 94 shares held as treasury stock and in doing so specified that the stated capital was to remain at $3,600,000. The Board also increased the stated capital from $3,600,000 to $4,882,500 by transferring $1,282,500 from surplus to stated capital. As a result of these two steps the stated value of each share was increased from $900 to $1250.

[5] At the meeting of October 5, 1937, the stockholders voted two amendments to the Articles of Incorporation. The first amendment reduced the authorized capital stock of 4,000 shares without par value to 3906 shares without par value. This was in consonance with the cancellation of the 94 shares of treasury stock. The second amendment increased the capital stock from 3906 shares without par value to 1,000,000 shares having a par value of $5.00 and provided that the 3906 shares outstanding be reclassified into 976,500 shares by exchanging 250 shares of the new $5.00 par value common stock for each outstanding share of old no par value stock.

[6] The record discloses that the decedent's estate was settled in 1943; the first and final account was filed in the Orphans' Court of Allegheny County, Pennsylvania, No. 5669 of 1940, on April 30, 1943; the account was confirmed nisi on June 1, 1943; it was confirmed absolutely, after audit, and a decree of distribution was entered by the Orphans' Court on June 29, 1943. The executor of the decedent's estate did not include in his inventory and appraisement, in his account, or in his audit statement any part of the 12,000 shares of stock received in the split-up. It was more than a year later, on August 4, 1944, that the testamentary trustee under the McCune will filed his first and final account as such trustee in the Orphans' Court of Allegheny County, Pennsylvania, No. 4682 of 1944, wherein he reported the receipt of the 12,000 shares of stock received in the split-up. The account was confirmed nisi on September 5, 1944; it was confirmed absolutely, after audit, and a decree of distribution entered by the Orphans' Court on October 25, 1944, giving the 12,000 shares of stock to the remaindermen under the McCune will.

[7] The "70/250ths" is arrived at thus: there were 250 new shares of $5.00 par value issued for each old share. The old stock had a stated value of $900; if the exchange were on an even basis, only 180 new shares would have been issued for each old share, so that 70 out of each

The Taxpayer contends that the Corporations' transfer from surplus to capital was separate and independent from the stock split-up and that the issuance of new shares for the old neither constituted a stock dividend, nor gave rise to a situation calling for apportionment of the new shares between income beneficiaries and remaindermen under Pennsylvania law. Finally, the Taxpayer urges that the decision of the Orphans' Court of Allegheny County in the Walker Estate [8] is controlling in the instant case.

The District Court subscribed in toto to the Taxpayer's contentions as above stated. It made a specific finding that the transfer from surplus to capital and the subsequent issue of the split-up stock "was not the equivalent of a declaration of a stock dividend or an apportionable distribution" [9] and accordingly entered judgment for the Taxpayer.

We approach consideration of the issues involved in this appeal with the well-settled principle in mind that "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed." Morgan v. Commissioner, 1940, 309 U.S. 78, 80, 626, 60 S.Ct. 424, 426, 84 L.Ed. 585, 1035.

Our first problem is to determine whether a stock dividend resulted by reason of the transfer from surplus to capital and the subsequent stock split-up.

A *stock dividend* permits a corporation to retain for corporate purposes its accumulated profits and at the same time, in effect, to distribute such profits among its stockholders. The customary procedure incident to the creation and distribution of a stock dividend is as follows: (1) The capital stock is increased; (2) the new stock is paid up (by the corporation) with the accumulated corporate profits; (3) the new shares of paid-up stock are then distributed among the stockholders pro rata as a *dividend*.[10]

In the instant case the Corporation followed the usual design in the stock dividend pattern when it capitalized $1,282,500 of its accumulated profits in the surplus account, increased authorized capital stock from 3906 shares without par value to 1,000,000 shares $5.00 par value, and issued 250 shares of the new stock for each share of the old. In our opinion the proportionate part of the new stock attributable to the amount transferred from surplus to capital constituted a stock dividend.[11]

Our conclusion that a stock dividend eventuated brings us to the second question presented by this appeal: whether the Taxpayer's decedent, under Pennsylvania law, was entitled as an income beneficiary to a proportionate share of the stock dividend received by the trust estate. If she was, such share of the stock dividend is includible in her gross estate and taxable under Section 811(a). The fact that in the administration of the McCune trust the stock dividend was never actually distributed or credited to the decedent and was not treated by her executor (the Taxpayer) as part of her estate is not material. Earle v. Commissioner, 6 Cir., 1946, 157 F.2d 501.

The Pennsylvania Rule of Apportionment applicable in the instant case [12] on the distribution of extraordinary

---

250 new shares were attributable to the amount transferred from the surplus to the capital account. Decedent's share of the new stock on the basis of one-third (her interest under the McCune will) of 7%50ths of the amount issued to the trustee (12,000) was 1,120 shares.

[8] Estate of Lewis Walker, Sr., Dec'd, No. 95-A of 1943.

[9] Paragraph 1, "Conclusions of Law."

[10] The effect of a stock dividend is to transfer from the plenary control of the corporation to the control of the stockholders the surplus or undistributed profits against which the new stock is issued.

[11] Had the Corporation merely made a transfer from surplus to capital and stopped at that point a stock dividend would not have resulted nor would the mere transfer from surplus to capital have called into operation the Pennsylvania apportionment rule. Green v. Philadelphia Inquirer Co., 1938, 329 Pa. 169, 196 A. 32.

[12] The present law of Pennsylvania is contained in The Principal and Income Act of 1947, 20 P.S. § 3470 1 et seq., noting particularly Section 3470.5. But the provisions thereof are not retroactive. In re King's Estate, 1946, 355 Pa.

stock dividends between income beneficiaries and remaindermen is well-settled, although its application is frequently, as it was in this case, beset with difficulty. In re King's Estate, 1946, 355 Pa. 64, 68, 48 A.2d 858.

■ Preliminarily, it may be stated that the Pennsylvania Rule is designed to preserve the intact value of the corpus of the trust estate. Earp's Appeal, 1857, 28 Pa. 368. The intact value of the corpus is its value as of the time the trust comes into existence. In re Waterhouse's Estate, 1932, 308 Pa. 422, 427, 162 A. 295. Prima facie, intact value is "book value". In re Baird's Estate, 1930, 299 Pa. 39, 148 A. 907.

The Rule of Apportionment, as it relates to distribution of extraordinary stock or cash dividends, under the Pennsylvania decisions, is as follows:

Distribution of such dividends between an income beneficiary and a remainderman must be made so as to preserve the "intact value" of the estate. In re Flaccus' Estate, 1925, 283 Pa. 185, 129 A. 74. In re King's Estate, supra, 355 Pa. at page 69, 48 A.2d at page 861, the Court stressed the fact that "each individual share of stock possesses an intact value" and that in applying the Rule of Apportionment "the intact value of the shares *as of the date of the death of testator* must first be ascertained." (Emphasis in text).

■ The presumption is that extraordinary dividends are from earnings and belong to the income beneficiary. In re Waterhouse's Estate, **supra**, 308 Pa. at page 428, 162 A. 295. And the burden of proving that the intact value of a trust estate is or will be diminished and that an extraordinary stock dividend or any part of it belongs to the corpus of the trust is on the remainderman. In re Chauncey's Estate, 1931, 303 Pa. 441, 446, 154 A. 814.

■ Stated in capsule form, the intact value includes all undistributed corporate earnings accumulated *prior* to the creation of the trust estate. Earp's Appeal, supra. The stock dividends resulting from the capitalization of such earnings belong to the corpus of the trust. All undistributed earnings accumulated *after* the creation of the trust and stock dividends resulting from their capitalization belong to the income beneficiary. In re Harkness' Estate, 1925, 283 Pa. 464, 129 A. 458; In re Packer's Estate (No. 1), 1927, 291 Pa. 194, 139 A. 867. The treatment of complications arising in the application of the Pennsylvania Rule, such as capital losses, sales of stock, etc., are fully discussed in the decisions of the Pennsylvania Supreme Court which we have heretofore cited, as well as others, and the effect of those cases need not be reiterated here for the purposes of this review.

Applying these principles to the instant appeal, it is evident that the Taxpayer's decedent was entitled to a proportionate share of the stock dividend representing the capitalization of surplus earned *after* the McCune trust came into existence on June 8, 1934. Spelling it out in specific terms, if the $1,282,500 transferred by Corporation from its surplus to capital account in 1937 was earned *after* June 8, 1934, *all* the new shares created out of that capitalized surplus belonged to the income beneficiaries; if it was earned *prior* to June 8, 1934, *all* the new shares belonged to the corpus of the trust; and if *part* of the transferred surplus was earned *before* and some *after* June 8, 1934, an apportionment of the new shares should be made accordingly.

It is unnecessary to discuss in detail the contention of the Taxpayer with relation to the ruling in Walker's Estate, supra. That case was evidently decided on its peculiar facts and is inapposite.[13]

---

64, 67, 48 A.2d 858; 95 U. of Pa.L.Rev. 424 (1947).

For a comparison of the Rule of Apportionment as applied in the text hereof with two other rules on the same subject, the Massachusetts and Kentu ky Rules, see In re Nirdlinger's Estate,

1927, 290 Pa. 457, 462–465, 139 A. 200, 56 A.L.R. 1303.

[13] In the Walker Estate case, the trust instrument vested in the trustees power to divide or apportion income or corpus into shares or portions while in the instant case the trustees had no such power.

Finally, it may be noted that the District Court was in error in assuming that In re King's Estate, supra, required the conclusion which it reached. In that case there was no transfer of surplus to capital account such as existed here. The Supreme Court stressed the absence of such a factor in discussing the apportionment problem in the King case, stating, 355 Pa. at page 67, 48 A.2d at page 860:

"*The recapitalization and merger did not affect the capital* [*nor*] *increase or decrease the surplus.*" (Emphasis supplied)

For the reasons stated the judgment of the District Court will be reversed and the cause remanded with instructions to proceed in accordance with this opinion. The case was tried below upon a stipulation of facts and exhibits which fail to throw any light upon the critical fact as to whether the accumulation transferred from surplus to capital was earned either wholly or in part before the McCune trust came into being on June 8, 1934, and it will be necessary for testimony to be adduced on that score.