## Hottel Estate

*Achey & Power* and *George P. Williams, Jr.*, for accountant.

*William H. Satterthwaite, Jr.*, and *George O. Phillips*, for exceptant.

*Donald W. Van Artsdalen*, guardian and trustee ad litem.

BIESTER, J., July 17, 1953.—This matter is before us for disposition by reason of exceptions to the report of the auditor filed by the guardian and trustee ad litem and provisional objection to counsel fee charged by the attorney for the trustee.

Joseph M. Hottel died a resident of this county on March 25, 1938, and on April 4, 1938, letters testamentary were granted by the Register of Wills of Bucks County to decedent's children, Margaret Hottel (now Beers), George Thumlert Hottel and Josephine Elizabeth Hottel (now Harris) and to the Corn Exchange National Bank and Trust Company.

On March 24, 1939, the executors filed their account indicating a balance in the personal account of $31,267.61, which was awarded to the Corn Exchange National Bank and Trust Company as trustee for the life tenants, being the three children heretofore named. Real estate valued at approximately $8,300 was also administered by the trustee.

After certain specific bequests of personal effects, and the devising of real estate known as the Pine Tree Farm to the trustee under certain terms and conditions of use by the children of decedent, the will provides, in paragraph 4 thereof as follows:

"Fourth. All the rest, residue and remainder of my property and estate, of whatsoever kind and descrip-

tion and wheresoever situate, I give and bequeath unto my Trustee by this my will appointed, its successors and assigns, in trust, nevertheless to collect and receive the income, issues, dividends and profits thereof, and to invest, reinvest and keep invested the principal of said Trust, and after paying out of said income all lawful costs, charges, taxes, commissions and expenses incident to the care and management of said Trust, then to pay the net income and hold and distribute the principal of said Trust, as follows:"

It is further provided that the principal of the trust shall be divided into three equal shares, one for each of the surviving children, each to receive his or her proportionate share of the income for life, and upon the death of any of the three children, then the principal of the child's trust so dying, to be paid to the issue of such child or, in the event that such child die without issue, to the remaining trust estates or estate.

On May 3, 1951, the trustee filed an interim first account in each of the three trusts.

Following the filing of the trustee's interim account, the court, upon petition, appointed a member of our bar guardian ad litem for all persons already born and those who might hereafter be born, and trustee ad litem for interest in posse, and likewise all persons possessed of a possible ultimate beneficial interest in remainder in the trust estates, to represent their interest in connection with the filing of the account.

On June 13, 1951, counsel for the cestuis que trustent excepted to the allowance of counsel fee of $500 charged in each account.

The guardian and trustee ad litem, before the auditor, excepted in general terms to the account, without reference to specific items, contending, in effect, that all credits of every nature charged against the principal, both personal and real estate, were improper and that in each instance the charge should have been

against the income accounts. In doing so, he relied upon a restricted, literal construction of that part of the language used in the fourth paragraph of the will, which provides that the net income should be paid over to the life beneficiaries "after paying out of said income all lawful costs, charges, taxes, commissions and expenses incident to the care and management of said Trust."

The auditor concluded that there was no merit to this argument and that the items charged to the principal account were properly so chargeable. He did, however, direct that the costs of the audit, including the auditor's fees and expenses, together with the costs of filing the account and counsel fee should be apportioned between the principal and income accounts in the proportion of 10 to 1; that is to say, 90 percent to be borne by the principal of the estate and 10 percent by the life estates.

In view of the finding of the auditor in this regard, counsel for the life tenants withdrew his exception as to the amount of the counsel fee, since the income account was to be charged with but $150 of the $1,500 fee charged for the three accounts.

The auditor, in his report, singled out those items in the account which he regarded as being contemplated by the general exceptions filed by the guardian and trustee ad litem.

He found 10 conclusions of law, the first conclusion of law holding that the fourth paragraph of the will "did not require an abnormal allocation of expenditures between principal or income or that every expense be charged to the life tenants." Conclusion 2 approves charges to the principal account, totaling $377.65. Of the eight items listed, seven items, totaling $8.39, were miscellaneous charges evidently incurred in connection with the preparation of the first and final account of the executors of the estate. The

additional item of $369.26 represents the payment of a deficiency in the Federal estate tax. Conclusion 3 approves of the charge to the principal of the personal estate account of items totaling $10.54, and representing liability insurance on unproductive real estate. Conclusion 4 approves of credits against the principal of the personal estate of losses on the sale and exchange of securities and expenses arising therefrom. Conclusion 5 approves of a credit against the real estate principal in the amount of $666.66, representing partial payment of the principal of a mortgage held against decedent's real estate. Conclusion 6 approves of charging the principal of the personal estate for taxes on unproductive real estate in the amount of $214.29. Conclusion 7 approves of charges against the principal of the personal estate totaling $126.31. Of the items listed under conclusion of law 7, items totaling $9.35 represent miscellaneous expenses incurred in connection with the sale of the real estate. The remaining item of $116.96, represents an excess of expenditure over income on the premises owned by decedent at the time of his death situate at 208 East Gorgas Lane, Philadelphia. Conclusions 8 and 10 approve of the counsel fees, costs of filing the account, the costs of the audit, the auditor's fee and fee of the guardian ad litem on a basis of 10 to 1, 90 percent being charged to the principal account and 10 percent to the income account. Conclusion 9 approves of items totaling $1,171.94 claimed by the accountant as credits against the principal of the real estate account.

Since the accounting for each trust is identical, the auditor made his findings in respect to the account held in trust for the benefit of Margaret Hottel Beers, stating, however, that his findings were equally applicable to the remaining two trusts. This having been the pattern set by the auditor, which has our approval, we will follow the same practice and, when referring

to the specific accounting in question, any findings or statements attributable thereto will have like application to all three accounts.

Following the filing of the auditor's report, the guardian and trustee ad litem filed exceptions thereto "in order that the court may pass upon the questions involved and to avoid any criticism being subsequently raised that the guardian failed to file exceptions and allowed the auditor's report to be confirmed by the court as a matter of course."

Nine exceptions were filed by the guardian and trustee ad litem, each of the conclusions of law being excepted to other than conclusion of law 5.

As to conclusion of law 9, the guardian and trustee ad litem excepted only to the following items:

| | |
|---|---:|
| Feb. 18, 1949, Adjustment of 1949 taxes: | |
| 1 mo., 4 days' share of $11.19 | $ 1.06 |
| Assessment for construction of sewer: | |
| 80 feet front at $2.00 per foot | 160.00 |
| June 8, 1949, Adjustment of 1949 taxes: | |
| 4 mos., 9 days' share of $9.90 | 3.47 |
| July 5, 1949, Adjustment of 1949 taxes: | |
| 5 mos., 2 days' share of $11.88 | 5.31 |
| | $169.84 |

Exception 10 to conclusion of law 10, specifically excepts to the auditor's division of the costs of audit in an apportionment or ratio of 10 to 1.

We heard argument upon these exceptions, at which time counsel for the life tenants advised the court that his exception as to counsel fee was withdrawn provisionally to the court's approval of the auditor's report. In other words, if the court should reach a conclusion differing from that of the auditor and determine that the position of the guardian and trustee ad litem was justified and that all costs and expenses should be allocated to the income account, or in the event the court did not approve of the auditor's placing 90 per-

cent of the costs and expenses against the remainder-man, the exception as to the amount of the counsel fees was to be regarded as reinstated.

In order to pass upon these exceptions we are called upon to interpret the phraseology employed by the scrivener in paragraph 4 of the will as to the effect to be given to the wordage "and after paying out of said income all lawful costs, charges, taxes, commissions and expenses incident to the care and management of the Trusts, then to pay the net income, etc."

The terminology employed in this clause is strikingly similar to that employed and construed in Crozer's Estate, 342 Pa. 71, and we regard it as subject to a like interpretation.

It is our view that unless the language is so clear as to be free from doubt, as in McCaskey's Estate, 307 Pa. 172, such clauses refer only to the normal and ordinary costs, charges, and expenses customarily incident to the proper execution of the trust.

It is unthinkable that the scrivener of such a carefully prepared will, as is before us, could have intended, without more precise and explicit language, to impose upon the life tenants all expenditures made by the trustee, including those expressly and solely for the benefit of the remainderman. We, therefore, attach no particular significance to the phrase and find that no deviation from normal accounting or the normal allocation of charges was intended by its use.

We, therefore, confirm conclusion of law 1 found by the auditor to the effect that the fourth paragraph of the will did not require an abnormal allocation of expenditures between principal and income, or that every expense be charged to the life tenant.

Applying the usual rules and practice as to items properly chargeable against the principal account, we confirm conclusion of law 2 which involves incidental expenditures in the amount of $8.39, evidently

incurred during the administration of decedent's estate, and also the item representing a deficiency in the Federal estate tax of $369.26, all of which items we regard as being properly charged against principal.

Conclusion of law 3 approves the charge of $10.54 against principal for costs of liability insurance on unproductive real estate.

The costs of this protection were properly incurred, being designed primarily for the benefit of the trustee and, secondarily, for the benefit of the life tenants and the remaindermen. There is authority to the effect that such costs should be borne by the income account (Reiff's Estate, 49 D. & C. 119) but, since both the life tenant and the remainderman might be adversely affected by failure to provide for such insurance, we regard the division of these items of expense equally between the principal and income as being equitable.

Conclusion of law 4 approves of the charge against principal of $56.19 for losses on the sale and exchange of securities and expenses arising therefrom. This conclusion is approved.

Conclusion of law 6 finds that items totaling $214.29 and representing taxes on unproductive real estate are properly charged against the principal estate account. Exception 9 falls, in part, within the same category, since the guardian ad litem excepts to charges of taxes totaling $9.84 allocated against the principal of the real estate account.

Prior to Levy's Estate, 333 Pa. 440, and Crozer's Estate, supra, we believe that the consistent practice was to charge such items against income. Counsel for the life tenants cites these cases as authority for the proposition that the remainderman must now pay the expenses of carrying unproductive real estate. This appears to us to be a misconception of the effect of the cases in question. We understand these cases to hold that departure from the previously established general

rule that charges against unproductive real estate should be charged against income in each instance is now permitted and, depending upon the equities of each case, such items may be directed to be paid in their entirety from either income or principal, or divided between the two according to the equities that obtain in each case.

The formerly existing principle that carrying charges on real estate, whether productive, unproductive or underproductive, should be taxed against the income, has undergone a complete revision, the modern tendency being to charge such expenses to principal.

This tendency is exemplified by such cases as Levy's Estate and Crozer's Estate, and received statutory recognition by the Act of May 3, 1945, P. L. 416, and by the Act of July 3, 1947, P. L. 1283, 20 PS §3470.11, repealing the 1945 Act.

Although we recognize that these acts have no direct application to the present trust (see King Estate, 355 Pa. 64; Pew Trust, 362 Pa. 468), we believe that we may give weight to the trend of contemporary accounting in this regard, and are convinced that the equities of the usual situation justfy the imposing of such costs against the principal of the estate. We, therefore, approve of charging the taxes on unproductive real estate against the principal as was done in the instant case.

Conclusion of law 7 approves items totaling $126.31. Of these items $9.35 represents miscellaneous expenses incurred in connection with the sale of the real estate and we regard this as properly chargeable against the principal account.

The remaining item of $116.96 represents an excess of expenditures over income on premises situate at 208 East Gorgas Lane, Philadelphia.

Where, as in this instance, we have one trust, consisting of both personal and real estate, it appears

to us to be manifestly unjust to permit all of the loss sustained in the carrying of one item of real estate to be assessed in its entirety on principal.

It may be that under the Principal and Income Act of 1947, not applicable here, such charges on underproductive real estate are properly chargeable to principal to the extent that the income from the property shall not be equal to such expense.

This was the conclusion reached in Lawrence Trust, 79 D. & C. 515, but, as the court there said, the construction of this section involves a problem of semantics and we believe that the pertinent phrases will be subject to varying interpretations until our appellate courts construe them, or the legislature amends the language in order to avoid the ambiguity.

The expenditures charged against the premises in question, which have resulted in the deficit, are of such varied nature as to their proper charge against principal or income, or a division between the two, that we believe that an equitable allocation would be an equal division of this deficit item between principal and income. The remaining item specified in exception 9 is an assessment for the construction of a sewer at the cost of $160. We regard this item as property chargeable against principal.

To summarize our conclusion as to exceptions 1 to 9:

Conclusions of law of the auditor set forth in conclusions of law 1, 2, 4, 5, 6 and 9 and miscellaneous expenses incurred under conclusion of law 7, totaling $9.35, are affirmed and as to these items, the exceptions are dismissed. The exceptions to the report as to item 3 and the item of $116.96 in conclusion 7, are sustained in that we direct that one half of such credits should be charged to principal and one half of such credits to income.

The remaining exceptions 8 and 10 question the propriety of the auditor's directed division of counsel

fee, filing fees, auditor's fee and expenses and the fee of the guardian ad litem, he having allocated 90 percent of such charges to the personal estate and 10 percent to the income account.

Under the authority of such cases as Spangler's Estate, 21 Pa. 335; Butterbaugh Appeal, 98 Pa. 351; Crawford's Estate, 62 Pa. Superior Ct. 329, affirmed in 256 Pa. 504, and Miller's Estate, 12 Dist. R. 719, in the usual situation, the costs incurred in connection with the filing of an interim account shall be borne by the life tenants. This general principle however, is subject to many exceptions, such as set forth in Pfromm's Estate, 40 D. & C. 104, and Davidson's Estate, 287 Pa. 354, and we now believe it to be the duty of the auditing judge, after examining into the factual situation that obtains in the particular case, to direct a division or allocation of the charges and expenses in such proportion as he believes most nearly meets the equities in the given estate.

Without discussing at length the various problems that have arisen in connection with the respective rights of the parties in the estate now before us, we do not believe there has been any such deviation from the normal pattern as to justify an allocation of 90 percent of the costs and expenses against the principal estate. We do believe, however, that the accounting which has been filed and the clarification of the issues arising therefrom, is beneficial to both the life tenants and the remaindermen, and constitutes such a deviation from the norm as to justify the placing of 50 percent of the costs against principal of the estate and 50 percent against the income.

We, therefore, sustain exceptions 8 and 10 filed by the guardian ad litem and direct that the counsel fee, auditor's fee and costs and expenses, costs of filing the account and the guardian's fee be chargeable in equal proportions to principal and income.

The remaining problem which confronts us arises out of the exceptions filed to the allowance of a $500 counsel fee in each of the three trust estates.

In order to assist the court in fixing the just amount of the counsel fee and proper allocation of the various fees and costs incurred in connection with the filing of the interim account, the appointment of the guardian and the trustee's and auditor's fee and expenses, a hearing was held and testimony produced.

At this hearing counsel for the trustee testified at considerable length regarding the nature of the services performed by him, and was subjected to lengthy cross-examination by counsel for the life tenants.

No useful purpose could be achieved by our here reciting in detail the many and varied services performed by counsel for the trustee. One phase of the examination, however, is worthy of attention. Counsel for the trustee performed what appears to have been a valued service in settling a claim for Federal estate taxes for $1,054.72, the claim having been for $2,600.

It is our opinion that this service was performed for the executor of the estate and that the fee charged the executor included this service. Perhaps, as counsel for the trustee contended, the fee charged the executor was modest and under the circumstances did not properly compensate him for the value of the services he performed. Nevertheless, we do not feel justified in taking this matter into consideration in fixing the present fees and charging either the principal or the income with any fees which should have been paid by the executor.

Counsel for the life tenants in cross-examining counsel for the trustee, attempted to have him enumerate each service performed and in each instance fix the amount of fee properly chargeable to each item of service, and now asks us to fix the fee on the basis of counsel's testimony as to these various items.

The over-all service performed by an attorney in the settlement of an estate, or in many forms of litigation, cannot be cut into segments, a fee allocated to each segment, and from simple addition arrive at a just conclusion as to the proper charge that should be made. An artist cannot fix the value of a landscape by totaling the value of the service for painting each tree, or cloud. Neither can a lawyer appraise the value of services performed as to individual items and totaling them, arrive at a conclusion as to what his just fee should be. Such a method does not take into consideration the responsibility incurred for things done or undone, his constant vigilance regarding the affairs of his client, nor any of the many intangibles known to every practitioner and involved in all types of practice and possibly never more so than in the settlement of estates.

We have little to guide or assist us in arriving at the appropriate fee in the present case. No testimony was produced as to the value of the services performed and our minimum fee bill is silent as to counsel fees to be charged in the case of trustees' interim accounts.

The fee bill does, however, provide for the minimum fee to be charged by counsel for trustees *at final accounting*. Reference to these charges indicates that the minimum fee for each trust would be approximately $445. It will, therefore, be seen that the fee charged by counsel for the trustee's interim accounting exceeds the minimum fee to be charged in case of final accounting.

We recognize that, although fees fixed by minimum fee bills are not in any wise binding upon the court and represent the minimum fee only and do not take into consideration unusual and particularly meritorious services, such fee bills, however, should, and usually do, represent charges which the members of the bar of the county in question recognize as being the appro-

priate charge for the services in question under normal conditions. We agree that the fee bill has but limited application here, but do believe that reference to it under its limited application is permissible.

In the present case, although the trustee has, apparently, been competently represented, the testimony does not disclose any unusual or particularly difficult or arduous labor performed by counsel. We think, too, that it can be agreed that the problems arising here were not unique as to each of the individual trusts, but had common application to all, so that the questions involved were not distinct and separate as would be the case where three separate and disassociated trusts were being administered.

Counsel for the life tenants suggests a fee of $125 for each trust. This we regard as inadequate. On the contrary, we believe that counsel for the trustee erred in taking into consideration his services in reference to Federal estate taxes.

Under all the circumstances we believe that a fee of $350 for each trust is adequate and reasonable and fix the fee at this amount.