# Mallory's Estate.

*Wills—Absolute gift—Reduction of scope of gift—Intention.*

1. Where there is an absolute gift of a thing, later words in the same instrument will not operate to reduce the estate thus given. unless it is reasonably certain such was the intention of the donor.

*Courts—Orphans' court—Jurisdiction—Equity.*

2. Within the scope of its jurisdiction, the orphans' court is a court of equity.

*Corporations—Dividends—Extraordinary dividends—Trusts and trustees—Life estate—Remaindermen—Distribution of dividends —Decedents' estates—Income.*

3. A trustee who is entitled, as life tenant, to a portion of the shares of a corporation issued to the estate as an extraordinary stock dividend, will not, unless the language of the trust imperatively requires it, lose any rights therein, because, pending distribution by the court, the certificate is retained in the form in which it was issued by the corporation.

4. Where extraordinary dividends, whether of cash, scrip or stock, are declared and paid on shares of corporate stock left by a decedent in trust, they are to be distributed by giving to the corpus sufficient to keep intact the value of the shares, as they were at the time the trust began and by giving the rest of the dividend to those entitled to the income of the estate.

5. Under such circumstances, the court, in apportioning the dividend actually received, must consider the whole of the surplus existing at the time the dividend was declared, and not merely so much thereof as was included in the dividend.

Argued November 30, 1925. Appeals, Nos. 84 and 88, Jan. T., 1926, by Burnell D. Neighbours, Executor of estate of Jennie R. Mallory, deceased, and John B. Brooks, Administrator d. b. n. c. t. a. of Frederick Eugene Mallory, deceased, from decree of O. C. Erie Co., Sept. T., 1923, No. 146, dismissing exceptions to distribution in Estate of Frederick Eugene Mallory, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Exceptions to distribution. Before CLARK, P. J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed. Burrel D. Neighbours, Executor of estate of Jennie R. Mallory, deceased, and John B. Brooks, administrator d. b. n. c. t. a. of Frederick Eugene Mallory, deceased, appealed.

*Errors assigned* were dismissal of exceptions and decree of distribution, quoting record.

*P. V. Gifford,* with him *Harry L. Moore,* for Burrel D. Neighbours, Executor of Estate of Jennie R. Mallory, deceased.—In determining amount of surplus earned after the death of testator, the entire surplus shown by the books of the company as earned up to the date when the dividend was declared, must be considered, and not merely that amount of said surplus which was declared as dividend: Waterman's Est., 279 Pa. 491; Flaccus's Est., 283 Pa. 185; Wittmer's Est., 283 Pa. 311.

In determining amount of dividend received by one share of stock, the court below should have divided the number of shares of stock outstanding, into the amount of surplus earned to the date of declaration of dividend, instead of into the amount of surplus at time of testator's death.

The administrator d. b. n. c. t. a. of the estate of Frederick E. Mallory has no standing to except to or appeal from the order and decree of distribution of the orphans' court, concerning that estate: Shuman's Est., 45 Pa. Superior Ct. 587; Gallagher's App., 89 Pa. 29; Graff & Co.'s Est., 146 Pa. 416.

The title to that portion of the extraordinary stock dividend which Jennie R. Mallory was entitled to receive, became vested in her at the time the dividend was declared. It was her property, and if not reduced to actual possession by her, her estate is entitled to claim it.

*John B. Brooks,* with him *Charles H. English* and *Frank B. Quinn,* for John ,B. Brooks, Administrator d. b. n. c. t. a. of Frederick Eugene Mallory.—The language used in the will of Frederick Eugene Mallory indicates that he intended his wife, and she alone, should have the right to use the income from this stock and that he did not intend any of it to go into her estate after her death unless it had been severed from his estate and paid to her in her individual capacity during her lifetime.

The same question was decided in Nading v. Elliott, 137 Ind. 261, 36 N. E. 695. See also Antelo's Est., 24 Pa. Dist. R. 181.

Counsel for appellant does not distinguish between stock dividends declared by the directors of a corporation and cash dividends such as were paid in Stokes's Est. (No. 1), 240 Pa. 277.

A person having a life estate in the stock of a corporation is not entitled to the enhanced value of the stock due to undivided surplus profits; such enhanced value belongs to the remainderman: Connolly's Est. (No. 1), 198 Pa. 137.

OPINION BY MR. JUSTICE SIMPSON, January 4, 1926:

In identical language, save as to the number of shares included and the names of the remaindermen, testator, by four several provisions of his will, gave to his wife 1,700 shares of the capital stock of the Ohio Fuel Gas Company, in varying proportions, in trust for herself for life, with remainders to a number of his relatives. During the continuance of the trusts, the corporation declared an extraordinary stock dividend of 100 per cent, and paid it by issuing a new certificate for 1,700 shares, in the name of testator, because the original stock still stood in his name on the books of the corporation. Shortly after the receipt of the new certificate, the widow petitioned the court below to distribute the shares between herself, as life tenant, and the remaindermen; she

having died before the determination of this question, her
executor filed his account, and, at the audit, renewed the
application. During all this time, the certificate re-
mained in the name of testator. From the decree of dis-
tribution which followed, these two appeals were taken.

Two questions are raised: (1) Does the fact that the
widow allowed the certificate to remain in its original
form, operate to debar her estate, because of the lan-
guage of the will, from receiving that portion of the
dividend which represented earnings accruing after tes-
tator's death? and (2), if not, Did the court below err
in the way it apportioned the stock between her estate
and the remaindermen? Neither of these questions is
difficult of solution.

The first contention grows out of the provisions of the
will, by which testator gave the stock specified to his wife
"in trust, to have, hold and pay over to herself, for her
own use and benefit, the use, income and dividends there-
of, for and during all the term of her natural life; and
from and immediately......[after her death, he gave
the] principal and the unpaid income and dividends
thereof" to the remaindermen. It is clear to us that the
"unpaid income and dividends" referred to, are those
"unpaid" by the corporation, and not the "income"
which had accrued and been distributed in the form of
"dividends," as was the situation here. The conclusion
thus reached is in accordance with the general rule that
where there is an absolute gift of a thing, later words in
the same instrument will not operate to reduce the estate
thus given, unless it is reasonably certain that such was
the intention of the donor: Robinson's Est., 282 Pa. 531.
The fact that the widow did not formally surrender the
certificate, and cause four new ones to be issued to her-
self, as trustee, one for each trust, and then, in turn,
surrender them, and get eight new certificates, one, in
each trust, to herself individually, covering the income
which had accrued therein since the death of testator,
and the other to herself as trustee for herself for life,

with remainder as specified, does not increase the shares of the remaindermen. She held the dividend, in the form of the stock certificate, for the benefit of herself and the others interested, even though it stood in testator's name. She could, as executrix, have transferred it to herself at any time, but was not required to anticipate the action of the court in determining how much really belonged to her, and how much to the remaindermen. Under such circumstances, a court of equity (which the orphans' court is, within the scope of its jurisdiction) will consider that as done which would have been done had the precise rights of the parties been judicially ascertained. If, though not knowing exactly how many shares she was entitled to have, the widow had transferred all of them to herself, she would certainly have subjected herself to criticism, and perhaps to a loss also, if thereafter disaster overtook the corporation; she was not required to take either risk, and equity will not punish her because she did not.

Nading v. Elliott, 137 Ind. 261, and Antelo's Est., 24 Pa. Dist. R. 181, relied on by one of the appellants, does not help him. In the former, the widow was given a life interest in certain land and in a specified sum of money, and at her death the principal and "unpaid" income was to go to testator's descendants. It was held, construing that complex will in its entirety, that "unpaid" referred to income not paid to the widow, whether or not it had been collected by the trustee. Here, the income had been received by the widow, and the mere fact that she wisely awaited the decision of the court, before making any transfers, cannot operate to deprive her estate of its proper shares of the stock represented by the certificate she held. In Antelo's Est., supra, the gift was of the "net income quarterly" to testator's daughters for life and upon their decease "the income which would be payable to them if living as aforesaid, and their share of income in hand and accrued to the date of their respective deaths" was to go to testator's grandchildren.

It was properly held that "income in hand and accrued" could only refer to that which the trustee had collected but had not paid over to the daughters when the "quarterly" payments were made. Here, however, the widow already had that to which she was individually entitled, and much more.

The second question to be decided is only a matter of arithmetic. There are no unusual circumstances appearing in the case, and hence the general rule must be applied in apportioning this extraordinary stock dividend between the life tenant and the remaindermen. From Earp's App., 28 Pa. 368, to Harkness's Est., 283 Pa. 464, we have steadily held that "where extraordinary dividends, whether of cash, scrip or stock, are declared and paid on shares of corporate stock left by a decedent in trust, they are to be distributed by giving to the corpus sufficient to keep intact the value of the shares as they were at the time the trust began, and by giving the rest of the dividend to those entitled to the income of the estate." In applying this rule, in the present instance, the facts and figures are all admitted.

At the time of testator's death, the corporation had outstanding 792,520 shares of a par value of $25, making a total capitalization of $19,813,000, and its surplus then was $9,247,180.30. The aggregate of these two sums is $29,060,180.30, and this, when divided by the 792,520 shares, gives a liquidating value of $36.66 8/10 per share. Immediately before the extraordinary stock dividend was declared, the surplus had increased to $21,925,267.89, which, added to the $19,813,000 capital at that time, made the then total assets of the corporation $41,738,267.89, and this, when divided by the 1,585,040 shares, which were outstanding after that dividend was distributed, gave a present valuation of $26.33¼ per share. This shows that the liquidating value of each share in the trust was reduced, by the dividend, in the sum of $10.33 55/100, thus causing the corpus a total aggregate loss of $17,570.35 for the 1,700 shares. That

loss must be made good, therefore, out of the extraordinary dividend of 1,700 new shares, and requires that 667 shares and $6.57 in cash be allotted to corpus and 1,032 shares and $19.76½ in cash to the estate of the life tenant. The proof that this accords with the foregoing rule of "giving to the corpus sufficient [of the stock dividend] to keep intact the value of the shares as they were at the time the trust began, and by giving the rest of the dividend to those entitled to the income of the estate," is shown by the fact that the value of the 1,700 shares, at the time of testator's death, at $36.66 8/10 per share, and the value of the 2,267 shares, after the dividend was declared and paid, at $26.33¼ per share, plus the $6.57 cash, each equals $62,335.60.

The error of the court below consisted in not taking into the account the whole of the surplus existing at the time the dividend was declared, but only so much thereof as was included in the dividend. This would have been correct if there had been an attempt to distribute more than the amount of the actual dividend, for only the corporation can determine what dividends shall be declared and paid; but it has no applicability where, as here, the only question is how the dividend actually declared and paid shall be apportioned among those entitled to it.

The decrees of the court below are reversed, the appeal to No. 84, January Term, 1926, is sustained at the cost of appellee, the appeal to No. 88, January Term, 1926, is dismissed at the cost of appellant, and the record is remitted in order that distribution may be made in accordance with this opinion.