## Baird's Estate.

40

Argued December 5, 1929. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*J. Claude Bedford,* with him *Theodore S. Paul,* for appellants.

*James S. Rogers,* with him *E. Perry Campbell,* for appellees.

OPINION BY MR. JUSTICE KEPHART, January 6, 1930:
The rule for determining the intact value of an estate, the income from which is to be paid to a life tenant with

the remainder of the corpus over to designated persons, has not been definitely set forth. We know that it is fixed as of the date of testator's death and, as indicated in Nirdlinger's Estate, 290 Pa. 457, "intact value includes the par value of the stock, plus any accumulation of income, earned before the death of the testator......: Earp's App." Whether it is entitled to any further increases has not been definitely ruled. Market value has been eliminated as a standard of measurement: Packer's Est. (No. 1), 291 Pa. 194, 197; Jones v. Integrity Trust Co., 292 Pa. 149, 155. We have stated indiscriminately in our decisions that intact value is actual, intrinsic, liquidating or book value, but the customary standard of measurement used in the cases is book value. The prima facie standard of measurement of intact value of trust estates, the income of which is to be paid to a beneficiary, with remainder over, is the book value; and this standard remains fixed unless it can be established that the elements making up the book value are not true values. Such methods of valuation as the capitalization of income over a period of years and the averaging of values cannot be considered,—they are too uncertain for the definite purpose required,—and actual appraisement, though at times necessary when book value is not available, is often impossible, as the cost would be prohibitive.

In attacking book value as intact value, evidence may be submitted to show that any one of the several items which go to make up book value has a higher or lower value than book value at the date of testator's death. The proof necessary to establish the fact, inasmuch as it inferentially controverts a writing, should be of a character to leave no doubt that a mistake has been made. Ordinarily the courts will accept the company's manner and method of charging various items as correct when it is done in good faith, and the presumption would be that it is so done; the burden of showing the contrary is on the party asserting it. A conclusion that

intact value had a higher value than shown by the books relates only to the estate; it has no effect on the company's books as such. For illustration: In a company located in this state, the stock of a power corporation is carried on its books at $1; the stock in reality is worth several millions. The real value of this item at testator's death would be a proper increase of the item over book value on the ground of mistake. Also very valuable real estate is carried on a company's books at $1; this value would, of course, be the subject of proof.

Where one claims from an estate, and seeks to depart from the ordinary method of distribution, he must show facts that will warrant a distribution to him. The measure of proof must be that required to establish any similar fact. Here the remaindermen claimed, as part of intact value, a charge of $45,555.20 as the good will of a business sold to the company. It had been included when the company was formed, and written off, at testator's orders, several months before his death, and restored to the books within one year after his death. Testator owned the entire capital stock of the company. Good will is an intangible asset; it is not easy to define, and the factors which make it up are often subjected to severe criticism, depending on the individual viewpoint; its inclusion or exclusion in the value of the property should be a matter within the powers of the managers of the company. It is not such an item which, in the settlement of an estate, a court should add to book value to find intact value when the company had not included it at testator's death. It is of no moment that it had been written off the books before testator's death, and placed back several months thereafter, since there is no proof that the item had the value claimed at the date of testator's death and was to speak as of that date. There is no presumption of the value of good will in a given amount when that item has been removed from the books by the same managers who put it there. If it was to cover the time of death, the book entry

could have so noted it. The fact may be that at that time it had no value.

Good will may be a perfectly proper item when making an entire appraisal, or when it appears regularly in the books of the company. There is no doubt it may have a real value as a business matter, but in the settlement of estates it is safer to adhere to the rule first stated, that, unless the value is fixed by the company at testator's death, courts will not consider it. It was not shown to have had any value when originally placed on the books, and testator wrote it off the books with the statement that he wished "a clean balance sheet," its inclusion having been solely to fill out the value of the capitalization. Good will is sometimes like surplus, as described in Graham's Estate, 296 Pa. 436. The reason for its restoration here to the books is perfectly apparent, and had to do with income tax returns alone.

The court below approved the correction made by the officers on the company's books of a depreciation charge that occurred before death, thereby increasing intact value $8,480. Depreciation is an item which is ordinarily included in book value; if there had been a mistake in charging it off, even if made prior to testator's death, it may in good faith be corrected, whether it inured to the benefit of the life tenants or remaindermen, as the facts happen to warrant. Here the corporation charged off its books an excessive depreciation from 1915 to 1926. It was agreed by stipulation that the sum of $8,480 correctly represented the excess up to the date of testator's death. Appellee, in objecting, holds that the company has no power to do this as affecting intact value at the time of death. The correction has in good faith been regularly made on the company's books to cover an item which, to a more or less degree, always adheres to physical property; its measurement is a matter of corporate judgment, and when it appears on the books the burden shifts to the party contesting it to show that the readjustment was

in bad faith, since the books are prima facie evidence of intact value. This, appellee has not done. The correction was properly allowed.

Decree affirmed at appellant's cost.