Arrott Estate.

Argued October 3, 1955. Before STERN, C. J., STEARNE, MUSMANNO and ARNOLD, JJ.

*Charles C. Arensberg,* for appellants.

*William H. Eckert,* with him *Smith, Buchanan, Ingersoll, Rodewald & Eckert,* for appellee.

*Grubb, Guest & Littleton,* filed a brief for persons interested, under Rule 46.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 14, 1955:

The single question presented is: where a testamentary trustee in the course of administration purchases stock with funds from the corpus of the estate, the income from which is payable to a life tenant with remainder over, and the corporations declare stock dividends on the stock, is the intact value, required to be preserved for the remaindermen, its purchase price or its book value at the date of purchase? A majority of the court below ruled that it was the purchase price, one judge dissenting.

The facts in detail are recited in the adjudication of the learned auditing judge. The trustees purchased stock in several corporations. In each instance the purchase price exceeded the book value. Subsequently, the trustees received stock dividends from the respective corporations. The auditing judge ruled that the intact value of the corpus to be retained was the book value of the stock at the date of purchase and, consequently, decreed distribution to the life tenants. The trustees and the guardian and trustee ad litem filed exceptions, maintaining that it was the purchase price which constituted intact value. The exceptions were sustained by a majority of the court in banc, with a dissent as indicated.

The basic reason for the rule of equitable apportionment is that a life tenant is entitled to accumulated corporate profits and earnings on stock when it is sold, distributed, stock dividends declared, or the stock with accumulations is otherwise dealt with. The justness of the rule cannot be questioned. The difficulty is in its application.

In *King Estate,* 349 Pa. 27, 29, 36 A. 2d 504, it was stated by a unanimous court: "There is probably no more difficult and intricate branch of the law than the *application* of what is termed the Pennsylvania, or American, Rule of Apportionment. The principle of equitable apportionment was early established (see Earp's Appeal, 28 Pa. 368), and its development and refinements are ably discussed by former Chief Justice KEPHART in Nirdlinger's Estate, 290 Pa. 457, 139 A. 200, and in Waterhouse's Estate, 308 Pa. 422, 162 A. 295. There is a host of other cases, which need not be cited, dealing with various applications of the principle. In general, it is the rule that on distribution a life tenant is entitled to receive accumulated profits and earnings, except where necessary to preserve the

'intact value' of principal. Where there is a stock or cash dividend, a corporate liquidation, a sale or distribution in kind, the life tenant is entitled to such accumulated profits and earnings. It is wholly immaterial in what *form* such accumulations appear." The difficulty in application referred to is apparent in *subsequent* stock transactions in the *King Estate,* 355 Pa. 64, 48 A. 2d 858, and 361 Pa. 629, 66 A. 2d 68. There was no difference of opinion concerning the rule. Its application in the subsequent stock transactions was the subject of the diverse opinions in this Court.

The Legislature, by the enactment of the Principal and Income Act of July 3, 1947, P. L. 1283, 20 PS 3470, has directed how such apportionment thereafter shall be made. This Act, however, applies only to trusts thereafter created: *Warden Trust,* 382 Pa. 311, 115 A. 2d 159, and cases therein cited.

In determining what constitutes intact value, two situations must be considered: (1) whether the stock was acquired by the trustee at the inception of the trust from the testator or settlor; or (2) whether the trustee purchased it during the administration of the trust.

"Intact value" was defined in *Nirdlinger's Estate,* 290 Pa. 457, 463, 139 A. 200: ". . . Under the Pennsylvania or American Rule, adopted in most American jurisdictions, the rights of the life tenant and the remainderman to an extraordinary cash or a stock dividend declared during the life tenancy are determined by a division of the dividend between the claimants so as to preserve intact the book value of the devised property (the corpus) as it existed at testator's death. This was made clear by the decision in Earp's App., 28 Pa. 368, long recognized as a leading authority. *The effect of the rule is to give to the life tenant the income*

*which has been earned since the trust came into being,
but, at the same time, to preserve the value of the cor-
pus as it was at the date of the death of the testator,
or, to use a more convenient term, to preserve the in-
tact value of the estate.* This intact value includes the
par value of the stock plus any accumulation of income
earned before the death of the testator: Earp's App.,
supra. From it must be subtracted capital losses:
Dickinson's Est., 285 Pa. 449. . . ." (Italics supplied)

In *Waterhouse's Estate,* 308 Pa. 422, 427, 162 A.
295, we said: "The value of a trust estate, where its in-
come is paid to life tenants with remainder over, is
determined as of the time the testator dies and is called
intact value. It is so named because that *value is to
be kept intact for remaindermen* in the various subse-
quent distributions of income that might impair it. It
was early stated that intact value includes par value
of stock when par has been paid, plus any accumula-
tions at the date of death, but, prima facie, intact value
is book value. Intact value may be increased by stock
purchases, contributed surplus or any other capital
increase not attributable to earnings, and it is subject
to capital losses. The burden of lowering or raising
an intact value thus established lies on the party as-
serting it." To same effect see *Fisher's Estate,* 344
Pa. 607, 614, 26 A. 2d 192, citing with approval *Earp's
Appeal,* 28 Pa. 368 and *Waterhouse's Estate,* supra.

In *Baird's Estate,* 299 Pa. 39, 42, 148 A. 907, this
Court said: ". . . We have stated indiscriminately in
our decisions that intact value is actual, intrinsic, liq-
uidating or book value, but the customary standard of
measurement used in the cases is book value. The
prima facie standard of measurement of intact value
of trust estates, the income of which is to be paid to
a beneficiary, with remainder over, *is the book value;
and this standard remains fixed unless it can be es-*

*tablished that the elements making up the book value are not true values. . . ."* (Italics supplied)

It has, therefore, been definitely established that while the book value of the stock (the value appearing on the books of the corporation) is *presumptively* its intact value, *its true value may always be proved.* It is this true value which must be preserved for the remaindermen.

When, however, the trustee *purchases* stock, it is the *purchase price,* and not the book value, which constitutes its intact value.

We cannot profitably add to what Judge RAHAUSER wrote for the majority: ". . . In Bullitt's Estate, 308 Pa. 413 at 420, Mr. Justice KEPHART said: 'Following Jones v. Integrity Trust, 229 Pa. 149, in the purchase of stock under stock rights, the reasoning being parallel, there should have been added to the intact value of 1902, the book value of the 383 shares donated or awarded to the principal; *this forms a new intact value as a basis for future distribution; to it should be added the cost of the shares purchased since that time,* plus any contributed surplus or capital gains. See Waterhouse's Est., 308 Pa. 422.' (Emphasis supplied.)

"See also Hostetter's Trust, 319 Pa. 572 at 576, where Mr. Justice KEPHART said: 'It would be manifestly unfair to the life tenants to hold this stock in the trustee's possession for the remaindermen, since it had been issued on accumulated surplus brought about by the earnings of the company. It would be a greater wrong if the life tenants were compelled to add $17,-250 to the value of the shares remaining in the corpus before securing the stock, since that would make a total value of $136,761 for remaindermen. In giving to the life tenant the surplus shares over that necessary *to keep the value of the shares at the date of the trust plus that amount expended for purchase of the*

*additional shares, no harm was done to remainder interests.'* (Emphasis supplied.)

"The measure of the intact value of the corpus of a trust should be the same whether stock is purchased by a trustee for a trust by means of stock rights or on the open market. In either case the dollar value to be preserved for the remainderman is the cash of trust fund expended in acquiring securities for the trust.

"Scott on Trusts, Vol. 2, p. 1310, Note 4, states the law on this subject as follows: 'Where the stock was not received from the settlor but was subsequently purchased by the trustee for the trust, the intact value is the purchase price rather than the book value at the time of the purchase.' "

There is apparent confusion in the argument of the appellants that when *purchases of stock are made by a trustee, market value* and *cost price* are synonymous. This, of course, is inaccurate. Stock may have been purchased either above or below the then prevailing market price. In the case now before us, it appears that all the trustees' purchases were made at the market prices.

The question of whether intact value is "book" value or "market" value has ordinarily arisen when accumulated profits or income are to be distributed to life tenants in cash, stock dividends, etc., with respect to stock held by the trustees since the inception of the trust, and which *were received by the fiduciaries from estates of decedents or from settlors.* It appears frequently from the reported cases that when the prevailing market value was in excess of the book value, the remaindermen contended that market value should be preserved rather than book value—which, obviously, would be to their advantage. This Court has decided consistently that it is the "book" value (as above de-

termined) and not the "market" value which should be preserved.

It is quite different, however, when *trustees purchase stock* with cash from the corpus of the trust. The fallacy in the life tenants' contention that the *book value* and not the *cost price* (which they term *market value*) must be accepted as intact value is most apparent. Were such contention to prevail, the life tenants would receive *as income* not only accumulated profits but *corpus* equal in amount to the difference between the book value and the purchase price. Such a conclusion would not only be unjust to the remaindermen, but would be contrary to the basic principle of the rule. Furthermore, all cases in this Court are manifestly against such a doctrine.

Appellants rely largely on the following statement in *Jones v. Integrity Trust Co.*, 292 Pa. 149, 155, 140 A. 862: ". . . *market value has nothing to do with such distributions; under all the situations which arise only the intact value is to be considered. . . .*" Apparently in that case there existed a complicated corporate situation involving shares of stock originally held by testator, new shares purchased by the trustee, and extraordinary stock dividends. The appeal, however, was quashed on the ground that the case stated did not present sufficient facts on which to base a judgment. Under such circumstances the order quashing the appeal cannot be seriously regarded as an authority in support of appellants' contention.

Two other cases, *Packer's Estate (No. 1)*, 291 Pa. 194, 139 A. 867, and *Baird's Estate*, 299 Pa. 39, 148 A. 907, are also relied on by appellants in support of the contention that book value and not market value constitutes intact value. But in each of these cases such statements were made in connection with stock received by the trustee from a testator's or settlor's

estate, and did *not* involve the cost price of stock purchased by the trustee.

We need not cite our numerous cases on this subject (many of which were cited by the court below) and attempt to analyze their facts and seek to reconcile them. Where a trustee purchases stock with funds from the corpus of the trust, all that the life tenant is entitled to receive in distribution is the accumulated profits or income, in whatever form such accumulations appear, in excess of the purchase price of the stock, thus preserving the intact value of that portion of the trust.

The decree is affirmed at cost of appellants.