Cunningham Estate and Harvey Estate

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

*Samuel W. Morris*, for life tenants in Cunningham Estate.

*Pepper, Bodine, Frick, Scheetz & Hamilton* and *Duane, Morris & Heckscher*, for remaindermen in Cunningham Estate.

*J. Harvey Wagner, Jr.*, for life tenant in Harvey Estate.

*Edmonds, Obermayer & Rebmann* and *MacCoy, Evans & Lewis*, for remaindermen in Harvey Estate.

### Cunningham Estate

KLEIN, P. J., December 20, 1957.—This litigation is just another episode in the interminable conflict between income beneficiaries and remaindermen over the distribution of the earnings of trust estates.

Edith B. Cunningham, testatrix, died in 1933. She provided in her will for payment of income to designated individuals for life, with remainders over to other beneficiaries upon the termination of the trust.

In 1939 Fidelity-Philadelphia Trust Company, the trustee, purchased 100 shares of General Electric Company no par common stock, and later, in 1951, an additional 50 shares were purchased. The total cost to the estate of the 150 shares was $6,935.37. The

aggregate book value of the shares, as of the dates of purchase, was $2,403.50. In 1954 the corporation recapitalized its common stock and issued three new shares in exchange for each old share. This raised the number of shares held by the trust from 150 to 450. In order to supply the capital needed to support the new issue, the company transferred on its books $252,-000,000 from the earned surplus account to the capital stock account.

Trustee also purchased at various times a total of 150 shares of the common stock of Gulf Oil Corporation at a total cost of $8,736.50. The aggregate book value of the shares, as of the dates of purchase, was $8,997.96, which is slightly in excess of cost. In 1951 the corporation issued to each shareholder new shares on the basis of one new share of stock for each then held by the shareholders, increasing to 300 the number of shares held by the trust. This new issue was supported in part by capital surplus and in part by capitalization of $210,000,000 of earned surplus.

The primary question raised by the exceptions is whether such a stock split, supported by capitalization of earned surplus, is an occasion warranting an apportionment.

This precise question has apparently never been decided by our Supreme Court.[1] The auditing judge, after a careful and painstaking review of the problem, concluded that the transactions described above of the General Electric Company and the Gulf Oil Corporation constituted apportionable events. We are in accord with this ruling.

---

[1] The New York courts have held that an apportionment must be made under similar circumstances: In re Davis' Estate, 128 N. Y. S. 2d 152 (1953). See In re Fosdick's Trust, 147 N. Y. S. 2d 509 (1955) ; Muller's Estate, 145 N. Y. S. 2d 283 (1955) ; In re Sanford's Estate, 161 N. Y. S. 2d 507 (1957) ; Soles v. Granger, 174 F. 2d 407 (1949) ; Fownes Trust, 5 Fiduc. Rep. 239 (1955).

Counsel for the remainder interests argue strenuously that apportionments must be restricted to situations in which any one of the following four events, enumerated in Jones Estate, 377 Pa. 473 (1954), occur: (1) The distribution by corporation of an extraordinary cash or stock dividend; (2) the liquidation of the corporation; (3) a sale of the stock by the trustee, or (4) the issuance of stock rights. They insist that the transactions in question do not fit into any one of these four categories and hence that apportionment should not be made.

In our opinion, Jones Estate, supra, is inapposite as the problem in that case arose from the merger of two corporations. The court, relying upon Buist's Estate, 297 Pa. 537 (1929) ; King Estate (No. 1), 349 Pa. 27 (1944), and King Estate (No. 2), 355 Pa. 64 (1946), reaffirmed the well-established principle that "accepting shares of stock in a merged company is not tantamount to a distribution or division of assets which call for an apportionment between a life tenant and remainderman". The court, accordingly, refused to extend the rule of apportionment to cases where a merger occurs, even though surplus and undivided profits are capitalized as part of the merger.

We agree with the conclusion of the auditing judge that an apportionment is to be made whenever, independent of a corporate merger, earnings or earned surplus are capitalized to support, in whole or in part, the issuance of new shares, whether those shares be issued in exchange for outstanding shares or as a dividend on outstanding shares.

This conclusion, in our opinion, cannot be looked upon as an extension of the list of occasions for apportionment enumerated in Jones Estate, supra. Although the transactions in the present case have not been designated as stock dividends by the General Electric Company and the Gulf Oil Corporation, nevertheless,

they must be regarded in the nature of stock dividends because earnings have been capitalized and therefore are no longer available for the payment of future dividends.

The next problem confronting the auditing judge was to determine how to ascertain the intact value of the General Electric Company stock, which was purchased by the trustee at a price in excess of its book value, and of the Gulf Oil Corporation stock, which was purchased at less than its book value. In both instances the auditing judge ruled that the price at which the shares were purchased by the trustee must be regarded as the intact value regardless of the book value at the time of purchase. We have no doubt concerning the correctness of this ruling. Any doubt with respect to this question has been conclusively resolved by the Supreme Court in Arrott Estate, 383 Pa. 228 (1955), which controls the instant case, and which definitely decided that the purchase price is the intact value of stock purchased by the trustee in the course of the administration of a trust estate.

Having correctly decided that events warranting apportionment have occurred, and that intact values have not been impaired, the auditing judge ruled that the income beneficiaries are entitled to receive only so much of the earnings of the corporations as (a) were earned subsequent to the acquisition of the stocks by the trustee, (b) have been capitalized to support the issue of the stock dividends and (c) the retention of which by the trustee is not required to preserve intact value.

We concur completely in these conclusions.

Having determined the cash value of retained earnings available for distribution to the income beneficiaries, two additional questions immediately arise where this distribution takes the form of shares of stock of the corporation.

First, which date is to be used to determine the valuation of the shares to be retained and those to be distributed? The auditing judge held, and we are all in full agreement, that the apportionment calculations are to be made as of the record dates of the occurrence of the apportionable events and not the dates upon which the distributions of the shares of stock are actually made by the trustee.

The second question, which also appears to be one of first impression in Pennsylvania, is whether the shares which are to be distributed are to be valued on the basis of book value or market value. The auditing judge concluded that the book value, and not the market value, should be used in valuing the shares to be distributed. This is the only ruling in this involved and complicated case with which we disagree. Although there is considerable merit to the auditing judge's reasoning in arriving at this decision, we believe it would be preferable to use market value as the yardstick to measure this final apportionment calculation, where trustee purchased shares are involved. But whether book value or market value is to be used for the determination of the arithmetical calculation we are now discussing, is not, of itself, nearly so important, in our opinion, as the adoption of a fixed standard which trust administrators can hereafter use as a dependable guide.[2]

The auditing judge relied largely on the authority of Arrott Estate, supra, in reaching his conclusion in

[2] The unpredictability of the Pennsylvania apportionment rule is well illustrated by comparing the present case with Harvey Estate (O. C., Phila.) no. 3165 of 1940, in which an opinion has been filed of even date herewith. In that case the trustee acquired decedent-owned shares of General Electric Company stock in 1939, a few months after the trustee purchased shares of stock of the same company in this case. The distribution in the Harvey case is drastically different from the one in the present case because decedent-owned shares were involved.

favor of book value. Our study of that decision, however, leads us to the conclusion that it has no bearing on the narrow question which we are discussing.

Our former distinguished colleague, the late Justice Allen M. Stearne, prefaced his opinion in the Arrott case by carefully explaining that:

*"The single question presented is:* Where a testamentary trustee in the course of administration purchases stock with funds from the corpus of the estate, the income from which is payable to a life tenant with remainder over, and the corporations declare stock dividends on the stock, *is the intact value, required to be preserved for the remaindermen, its purchase price or its book value at the date of purchase?"* (Italics supplied.)

It appears to be clear from a reading of the Arrott opinion in its entirety that the foregoing is a statement of the sole question decided by the Supreme Court. The method of calculation of the shares of stock distributable as retained earnings was not discussed or considered by the court at any place in its opinion. The case cannot, therefore, be accepted as authority for any principle of law except the single question which the court expressly indicated had been presented to it for decision.

Donald S. Cohan and Stephen T. Dean, members of the Philadelphia bar, have written a scholarly article, entitled "Legal, Tax and Accounting Aspects of Fiduciary Apportionment of Stock Proceeds: The Non-Statutory Pennsylvania Rules", 106 U. of Pa. L. Rev. 157 (1957). This treatise will be found to be most helpful in any study of the Pennsylvania apportionment doctrine. What the authors have said at page 212, is highly pertinent to the question we are discussing:

"In determining whether intact value has been impaired, it is important that the concept of market

value (cost) be separate and distinct from the concept of book value. Comparing the unrelated quantums of initial market value and terminal book value to determine if intact value has been impaired, or to delineate the amount apportionable, appears to be as erroneous as the comparison of cabbages and kings. When considering the impairment of intact value, market value should be compared with market value of trustee-purchased stock, and book value should be compared only with book value of stock acquired by the trustee from a decedent or settlor . . ." and further, at page 214, in speaking of the distribution traceable to earnings which do not impair intact value, the authors said:

". . . But if the distribution is to take the form of shares of stock, there remains the final problem of equating the predetermined dollar amount with the number of shares to be distributed, i. e., should those shares be measured in book value or market value? . . . It is suggested that logic requires the use of market value in the case of trustee-purchased stock and book value in the case of stock acquired from a decedent or settlor."

It is true that heretofore book value has generally been used as the yardstick for calculating apportionment distributions. The adoption of purchase price as the determinant for establishing intact value in Arrott Estate was admittedly a marked deviation from the established general rule. But once purchase price, which is almost always the market price of securities listed on the major exchanges, is adopted as one terminal point of the yardstick, it seems logical and consistent, as well as practical, to retain market value as the other terminus for the purpose of ascertaining whether intact value has been impaired as well as calculating the distributions to be made to the income beneficiaries.

Many factors are reflected in the establishment of market value of shares of common stock listed on the various stock exchanges. Book value is, of course, an important consideration, but such factors as earning power, growth prospects, caliber of management, good will, increased value of capital assets, are generally regarded as of equal or even greater importance.

We can safely assume that all of these basic factors which, together, combined to determine the market price of the shares, when the trustee made the purchase, generally remained more closely related to their actual value when the apportionable event occurred, than book value alone, which is but one of the criteria affecting the value of shares of stock.

It is therefore our considered opinion that market value, rather than book value, should be used for calculating the number of shares to be distributed when paying out distributable retained earnings in cases of trustee-purchased stock. This method should produce a more satisfactory and equitable result in the large majority of the cases.

The accountant is accordingly directed to recalculate the apportionments in accordance with this opinion and, as so modified, the adjudication is confirmed absolutely.

### Dissenting Opinion

LEFEVER, J., December 20, 1957.—More than 12 years ago the Pennsylvania Legislature, conscious of the ever-growing intricacies, complexities and difficulties in the application and administration of the Pennsylvania rule of apportionment, enacted the Uniform Principal and Income Act of May 3, 1945, P. L. 416, 20 PS §3471, thereby adopting the more exact and readily workable so-called "Massachusetts Rule." This was reënacted as the Principal and Income Act of July 3, 1947, P. L. 1283, 20 PS §3470. These statutes

have been held inapplicable to estates created prior to their enactment: Crawford Estate, 362 Pa. 458; Pew Trust, 362 Pa. 468; Warden Estate, 382 Pa. 311. The intricacies and variations of corporate finance and distributions to shareholders ever change and increase. Hence, trustees and the courts are still constantly struggling with new problems as to the application of the Pennsylvania apportionment rule.

In Jones Estate, 377 Pa. 473, the Supreme Court endeavored to terminate or at least to limit controversy on this subject by enumerating in precise terms the four situations in which the Pennsylvania rule of apportionment applies to those estates excepted from the applicability of the statutes. The court stated at page 476:

"Such an apportionment can and should be made upon the happening of any one of four events, namely, (1) the distribution by the corporation of an extraordinary cash or stock dividend, or (2) the liquidation of the corporation, or (3) a sale of the stock by the trustees, or (4) the issuance of stock rights: King Estate (No. 2), 355 Pa. 64, 65, 48 A. 2d 858; King Estate (No. 1), 349 Pa. 27, 36 A. 2d 504; Buist's Estate, 297 Pa. 537, 147 A. 606; Earp's Appeal, 28 Pa. 368; Nirdlinger's Estate, 290 Pa. 457, 139 A. 200; Mallory's Estate, 285 Pa. 186, 131 A. 714; Waterhouse's Estate, 308 Pa. 422, 162 A. 295; Jones v. Integrity Trust Co., 292 Pa. 149, 140 A. 862.

"Appellants now seek to have the Rule of Apportionment extended and applied to cases where a merger occurs and surplus and undivided profits are capitalized as part of the merger. We find no reason or authority or justification for such an extension."

There is a time when accomplishment of real justice requires the exactness and sureness of a precise and workable rule rather than the ephemeral will o' the

wisp of an equitable doctrine which requires constant redefinition. Lord Coke's famous aphorism is apposite, ". . . the knowne certaintie of the law is the safetie of all".[3]

The majority opinion in the instant case concedes that: "This precise question has apparently never been decided by our Supreme Court", and then proceeds to extend the area of apportionment to stock splits, which were supported in part by a capitalization of earned surplus. Because of the complexities and difficulties involved in the application and administration of the Pennsylvania rule of apportionment, because of the public policy established by the legislature in 1945 in adopting the Uniform Principal and Income Act and finally because of the pronouncement in Jones Estate, supra, I am of the opinion that the Pennsylvania rule of apportionment should not now be extended beyond the four events specifically enumerated by the Supreme Court in Jones Estate. It follows that the stock splits of Gulf Oil Corporation and the General Electric Corporation in question should not be considered apportionable events. (If these were apportionable events, I would concur in the remainder of the majority opinion.)

For the reasons stated, I dissent.

### Dissenting Opinion

SAYLOR, J., December 20, 1957.—I dissent from that part of the opinion of the court en banc which holds that market value and not book value is to be employed in computing the number of shares to be distributed. I agree with the majority that this question was not presented in Arrott Estate, 383 Pa. 228 (1955), and expressly so stated in my adjudication, noting that "while Arrott Estate . . . did not involve a decision on this point, the opinion in that case

---

[3] Coke, on Littleton, vol. II (19th Ed.), p. 395.

is relevant". For the reasons stated in the adjudication I still consider that opinion to be relevant. At page 232 thereof the Supreme Court quoted with approval Baird's Estate, 299 Pa. 39:

" 'We have stated indiscriminately in our decisions that intact value is actual, intrinsic, liquidating or book value, but the customary standard of measurement used in the cases is book value. The prima facie standard of measurement of intact value of trust estates, the income of which is to be paid to a beneficiary, with remainder over, *is the book value; and this standard remains fixed unless it can be established that the elements making up the book* value are not true values . . .' ". (Italics supplied by the Supreme Court.)

In my adjudication Baird's Estate, 299 Pa. 39, 42 (1930), was also quoted for the proposition that "market value has been eliminated as a standard of measurement". Also cited were Packer's Estate (No. 1), 291 Pa. 194, 197 (1927), and Moss's Appeal, 83 Pa. 264, 271 (1877).

In the latter case Mr. Justice Paxson said, page 271:

"Market values are well enough upon a question of distribution, where the parties are about to realize; but upon a question of values between life-tenants and remaindermen, a judicial decree should go down through the shifting sands of the stock market until it reaches the solid rock of actual values. The application of any other rule might work serious injustice."

Up to this moment the Supreme Court of Pennsylvania has consistently declared that book value is the proper standard. There does not appear to be any qualification in that court's statement of the rule which would justify a departure therefrom at this time.

The argument has been made by the learned authors quoted approvingly in the majority opinion that the

adoption of book value results in a comparison of cabbages with kings. In Arrott Estate it was claimed that the conclusion actually reached by the court would cause an absurd and unjust result because it would contrast apples with oranges and peaches with lemons.

Arrott Estate rejected the force of similes because the court is not concerned with matching pairs whatever the diversity of the components but with finding the present value. The dollars which in the instant case were transmuted into stock by capitalization and are now to be allocated to the life tenants were not purchased in the market place; nor were the shares of stock representing those dollars purchased there. The question is only what is the *value* of those shares of stock.

Concededly there is much merit favoring the view of the majority. However, the appellate cases decided to date warrant adherence to the rule that book value must be used.

## Harvey Estate

KLEIN, P. J., December 20, 1957.—R. Wistar Harvey died in 1939, leaving a will, which provided for payment of income to four designated individuals for life, with remainders over upon the termination of the trust to the Pennsylvania Hospital and the Philadelphia Museum of Art.

All of the questions raised by the exceptions arise from transactions involving shares of common stock owned by decedent when he died and retained by the trustees in the trust portfolio.

The first problem involves stock of the General Electric Company. In 1954, the corporation recapitalized its common stock and issued three new shares in exchange for each old share. In order to supply the capi-

tal needed to support the new issue, the company transferred on its books $252,000,000 from the earned surplus account to the capital stock account.

Counsel for the remainder interests contend that such a stock split, supported by capitalization of earned surplus, is not an occasion warranting an apportionment. The auditing judge concluded that it is. We are in full accord with this ruling. This precise question was discussed at considerable length in Cunningham Estate, supra, in an opinion filed of even date herewith. It is not necessary for us to repeat here what has been said in that case.

Decedent also died possessed of certain shares of the common stock of Insurance Company of North America and Fire Association of Philadelphia. These companies, in the conduct of their business since decedent's death, engaged in several transactions which the parties in interest in the present case agree by stipulation are occasions warranting apportionments.

The auditing judge ruled, and we agree with him, that the unrealized appreciation on the investments held by the two companies are not to be included within the category of "earnings" subject to apportionment. We are also in accord with his ruling that this unrealized appreciation must nevertheless be included in determining the value of the stock to be distributed to the life tenant. Any apparent inconsistency between these two conclusions has been fully explained by the auditing judge in his discussion of the question in the adjudication.

The exceptions are all dismissed and the adjudication, as modified by the supplemental adjudication, is confirmed absolutely.

### Dissenting Opinion

LEFEVER, J., December 20, 1957.—For the reasons stated in my dissenting opinion in Cunningham Es-

tate, supra, filed of even date herewith, a stock split supported in part by capitalization of earned surplus is not an apportionable event.

Accordingly, I dissent.