## Harvey Estate.

Argued May 2, 1958.   Before Jones, C. J., Bell, Musmanno, Arnold, Jones and Cohen, JJ.

*Oscar M. Hansen,* with him *J. Harry Wagner, Jr.,* and *Morgan, Lewis & Bockius,* for life tenant.

*Philip A. Bregy,* with him *MacCoy, Evans & Lewis,* for remainderman, The Contributors to the Pennsylvania Hospital.

*George B. Clothier,* with him *Obermayer, Rebmann, Maxwell & Hippel,* for remainderman, Philadelphia Museum of Art.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, January 12, 1959:

These appeals present questions as to the propriety, as well as the manner, of the apportionment between a life tenant and remaindermen of certain stock distributions received by the Girard Trust Corn Exchange Bank, surviving trustee under a trust created by the will of R. Wistar Harvey who died October 21, 1939.[1]

The decedent-settlor *owned* shares of stock in the General Electric Company and the Insurance Com-

---

[1] Helen S. Scott is the sole surviving income beneficiary under the trust, the terms of which need not be herein recited. The remaindermen involved in the present appeals are The Contributors to the Pennsylvania Hospital and The Philadelphia Museum of Art.

pany of North America which were subsequently awarded to the corpus of the trust. Some years subsequent to decedent's death the trustee received from both corporations certain stock distributions as a consequence of decedent's original stock holdings and the present controversy arises over the division of this stock between the life tenant and remaindermen.[2]

After decedent's death 925 shares of no par common stock of General Electric Company were awarded to the trust. The General Electric Company stock distribution of 1954, presently in issue and described by the corporation as a "change and conversion", involved the issuance of three new shares of stock with a par value of $5.00 for each old share of stock with a stated value of $6.25. The required par value of $15.00 for the three new shares was obtained by a "write-down" to the par value of the new shares of the stated value of each old share and a transfer of the necessary balance from "reinvested earnings" to the capital stock account. The life tenant urged and the court below held that this capitalization of earnings furnished a proper occasion for an apportionment. In *Cunningham Estate*, 395 Pa. 1, 149 A. 2d 72, we held that such a corporate transaction did not constitute an event requiring an apportionment, and, for the reasons set forth in *Cunningham*, we reach a like conclusion in the instant case.

The Insurance Company of North America stock distribution presents a different problem. All parties agree that this stock distribution involved an extra-

---

[2] Stock of the Fire Association of Philadelphia is also held by the trust and involved in these appeals. However, since this stock distribution poses questions identical to that of the Insurance Company of North America, our decision with regard to the Insurance Company's stock will control the valuation and distribution of the Fire Association's stock.

ordinary stock dividend, and, therefore, constituted an apportionable occasion and event.

The court below held that this constituted an apportionable event and apportioned the extraordinary stock dividend between the life tenant and the remaindermen in a manner of which we fully approve for the reasons herein set forth.

The basic problem in connection with this extraordinary stock dividend is the manner of determination of the *value* to be assigned to each share of the stock. Such value must be determined for two reasons: (1) to ascertain the number of shares, if any, which must be retained by the trustee for the preservation of the "intact" value of the corpus and (2) to ascertain the number of shares, if any, which are to be distributed to the income beneficiary. Such value must be either book value or market value on the date of distribution of this extraordinary stock dividend (so-called "record date"). If we determine the appropriate distribution value—to principal or income, or both—to be book value, then a subsidiary problem arises.

A considerable portion of the assets of the Insurance Company of North America at the time of this extraordinary stock dividend consisted of securities of other non-related corporations, which were considerably more valuable at the time of the apportionable event than they were either at the time of the purchase of such securities by the Insurance Company or at the time of testator's death. If book value is the appropriate value to be employed for apportionment calculations in this situation, two questions arise: (1) whether the unrealized appreciation on these securities constitutes "earnings" to which the income beneficiary is entitled?[3] (2) should the unrealized appreciation be con-

---

[3] As stated in one of the briefs: "Preliminarily it should be noted that no one contends that these unrealized gains or losses

sidered in computing the book value of the stock of the Insurance Company of North America?

Before determining the appropriate value—book or market—to be used in this apportionment calculation, a general statement of the Pennsylvania Rule of Apportionment and the mechanics of its application is appropriate. In substance, the Rule provides that, upon the happening of an apportionable event, a life tenant is entitled to receive profits and earnings of the corporation accumulated and undistributed since the settlor's death or the trust's acquisition of the stock, so long as the intact value of the trust principal to be preserved for the remainderman is not impaired: *Earp's Appeal*, 28 Pa. 368. The formula used to apply this Rule may be described briefly in the following steps: (1) the intact value of the stock held by the trustee on which the stock distribution was made must be determined;[4] (2) the intact value must be divided by a value per share assigned at the time of the apportionable event to determine the number of shares which must be retained to protect the intact value;[5] (3) if intact value is protected, and additional shares remain, the dollar amount to which the life tenant is entitled must be determined, that is the amount of earnings accumulated and undistributed by the corporation since the acquisition of

should be considered in calculating earnings." What the life tenant contends is that, if the unrealized market appreciation of those securities is excluded in determining "earnings", such unrealized appreciation should also be excluded in computing the book value of the stock dividend shares for the purpose of determining the number thereof to be distributed to the life tenant.

[4] The purpose of this determination is clear: if the aggregate value of the shares held by the trustee after the stock distribution is less than the intact value, no apportionment can be made to income.

[5] The parties agree that this number should never be less than the original number of shares held by the trust.

the stock by the trust or the death of the settlor; (4) the value per share to be divided into this amount must then be ascertained to determine the number of shares to which the life tenant is entitled; (5) any shares remaining after this calculation are retained in principal. It is readily apparent from an examination of the Rule that its purported equitable propensities are governed entirely by the values that are assigned to determine intact value, the value per share used to preserve intact value, and the value per share used to distribute the accumulated earnings to the life tenant.

*In the case of decedent-owned stock,* such as that presently involved, *the intact value is presumptively book value at the date of decedent-settlor's death: Waterhouse's Estate,* 308 Pa. 422, 427, 162 A. 295; *Baird's Estate,* 299 Pa. 39, 42, 148 A. 907; *Mallory's Estate,* 285 Pa. 186, 191, 192, 131 A. 714; *Moss's Appeal,* 83 Pa. 264.

Our initial inquiry therefore is directed toward assigning a value per share at the time of the apportionable event for the purpose of determining the number of shares of stock which are required to protect and preserve the intact value. The value selected should approximate as closely as possible the value per share used to determine the original intact value so that the *status quo* of the remaindermen may be maintained. As a matter of logic and consistency, we believe that for the purpose of preserving intact value, stock, after a stock dividend, should be valued at book value. Book values of the stock on the comparable dates—the date of testator's death and the date of the apportionable event—are more closely related since such values are based on the same provable and somewhat more stable elements than those upon which market values depend. As Mr. Justice (later Chief Justice) STERN stated in *King Estate,* 361 Pa. 629, 635, 636, 66 A. 2d 68: "The

necessity of preserving intact value does not mean a preservation in the sense of the estate's actually obtaining the amount of that intact value in cash, but only a preservation of its book value; intact value and market value are, for this purpose, wholly unrelated; many stocks sell on the market for less than one-tenth of their book values, while other stocks, especially if speculative in nature, sell for many times their book values; the value of a stock in the market depends upon a myriad of factors other than the actual inventory value of the company's assets as reflected in the books of the corporation". *Book value* of the stock at the time of the apportionable event is the yardstick to be employed to determine the number of shares of stock, if any, which must be retained by the trustee to protect the intact value. Such a conclusion is in line with our previous adjudications.

The next step is to determine what value shall be employed in distributing to the income beneficiary the number of shares equal to the accumulated and undistributed earnings. The payment to the income beneficiary arises from the shares of stock distributed by the corporation as an extraordinary stock dividend after enough shares have been set aside to protect the intact value. The remaindermen argue that market value, not book value, should be employed in this calculation, while the life tenant argues the converse. The theory of the remaindermen is that if the life tenant were to immediately sell the shares apportioned to her, the amount of the accumulated earnings represented by such shares would theoretically be received. They lose sight of the fact that what is apportioned by the Rule are the *shares of stock* contained in the extraordinary dividend, and that the purpose of the Rule is to make an equitable and fair division between the life tenant and themselves of such shares of stock. In most

cases market value is higher, even substantially higher, than book value. When it comes to the protection of the intact value of the trust corpus the remaindermen are insistent upon the use of book value; when it comes to the ascertainment of the number of shares to be allocated to the life tenant they want as few as possible allocated, and urge market value as the measuring stick. With the employment of book value to preserve intact value, the remaindermen have received their share of protection; the same value should be used in the protection of the life tenant—usually the primary object of the decedent settlor's bounty. If we were to adopt market value as the criterion in this respect, the remaindermen may well receive additional shares of stock to which they are not rightfully entitled, namely any shares remaining after the life tenant has received the number of shares at market value equal to the accumulated and undistributed earnings. To avoid such a result and to deal as equitably as possible with both the life tenant and the remainderman, book, not market value, should be used to determine the number of shares to which the life tenant is entitled.

Finally, and most important, in ascertaining the amount of earnings and/or the book value of the stock of North America how do we treat *unrealized* appreciation in the value of securities of other non-related corporations carried as assets of North America?

North America has invested a portion of its earnings and profits in these securities. These securities are carried on the corporate books of account at the cost thereof and no entry is made in such corporate books to reflect any change in the market value until the securities are sold. However, in its "Convention Reports" filed with the insurance departments of each State in which it does business and in the balance sheets contained in its stockholders' reports, North America

does reflect the unrealized appreciation of its investment portfolio.

The life tenant contends that the enhanced value of these securities should be included in arriving at the amount of "earnings" to which the life tenant is entitled, if in ascertaining the book value of such securities this unrealized appreciation is utilized. Such a contention is without merit. As stated in *Fox's Estate,* 53 D. & C. 1, 5: ". . . The claim of the life tenant now is for unrealized gains; *and his error is in assuming that a paper profit is as good as a cash profit, and that the amount of the paper profit can be fixed with accuracy."* (Emphasis supplied). The ascertainment of "earnings" is for the purpose of immediate distribution of the amount of such "earnings" to the life tenant: "earnings" cannot possibly include unrealized appreciation.

On the other hand, in ascertaining the book value to be used in allocating shares for the preservation of the intact value of the trust principal and for the allocation of shares to income, we seek the value of the assets of North America. The primary function of the use of book value is to ascertain as closely as possible the actual value of the stock as represented by the assets of the corporation.

Our approach to the problem of the inclusion or exclusion of unrealized appreciation of securities held in a corporation's investment portfolio for the purpose of determining the book value of the stock of such corporation must be a practical approach, such an approach as will facilitate, not impede, the application of the Pennsylvania Rule of Apportionment and will render it more, not less, workable. No hard and fast rule can or should be promulgated to the effect that the unrealized appreciation of a corporation's assets should be considered in determining the book value of that corporation's stock in *every* instance; in large measure,

each factual situation must be considered sui generis. If the enhanced value, reflecting unrealized appreciation, cannot be established readily, incontrovertibly and with certainty, then to permit the inclusion of such enhanced value in determining the book value of the corporate stock will add chaos to an already chaotic situation.

Many corporations carry assets, such as real estate, on their corporate books at either nominal or cost-of-purchase value. On the date pertinent to the ascertainment of the book value of the stock of such corporation those assets can and often do have a value—reflecting an unrealized appreciation—in excess of the figure at which such assets are carried upon the corporate books. For instance, a fiduciary, in apportioning an extraordinary stock dividend of Corporation X payable on July 1, must ascertain the book value of Corporation X's stock upon that date; Corporation X carries Whiteacre upon its books either at a nominal value or at cost-of-purchase value, but on July 1, the value of Whiteacre would be based upon opinion evidence as to the market value of Whitacre upon the record date; the establishment of such enhanced value would require the production of evidence and the end result would ordinarily be the establishment of a value based upon real estate experts' opinions of what Whiteacre *might* be sold for on the record date. The inclusion of such enhanced value as an item to be considered in determining book value in such a situation would be productive of more, not less, litigation in the field of apportionment, of more expenses and costs to be borne by the trust estate and would render more unworkable than ever the Pennsylvania Rule.

On the other hand, suppose that Corporation X carries as an asset upon its corporate books 500 shares of United States Steel Corporation common stock at cost-

of-purchase value; on July 1 such stock has a value in excess of its cost-of-purchase value. The value of this stock on July 1 can be readily, incontrovertibly and with certainty fixed and established by reference to the market value of such stock on the securities exchanges on that date. In establishing such value the fiduciary would know the price for which this asset *would,* not *might,* have been sold on the record date. In such a situation the inclusion of the enhanced value in ascertaining the book value of the stock of Corporation X will not be productive of litigation or unnecessary costs and expenses to the trust estate and will add to, rather than detract from, the workability of the Rule. However, the use of such enhanced value, reflecting unrealized appreciation, in fixing book value must be limited to those assets of the corporation whose value can be readily, definitely and with certainty established;[6] the limitation of the use of such enhanced value is dictated by a practical and realistic approach that the Pennsylvania Rule of Apportionment be made more workable.

In the present situation, North America's reports actually reflect the unrealized appreciation on assets held in the form of securities and the enhanced value of North America's securities can be fixed readily and inconvertibly by reference to the stock exchange prices on the record date. Therefore, the enhanced value, reflecting unrealized appreciation, of securities in the investment portfolio of North America may be taken into consideration by the fiduciary in fixing the book value of North America's stock.

Any seeming inconsistency in this conclusion is more apparent, than real. In apportionment calcula-

---

[6] Ordinarily, if Corporation X carried in its investment portfolio stock in a corporation unlisted on any securities exchange the enhanced value of such stock could not be considered.

tions book value is employed to determine as accurately as possible the value of the underlying assets of the corporation. In our opinion, the value which the market places upon the securities in the corporation's portfolio in this instance most closely approximates the actual value of such securities. In effect, we prefer to accept the figure which would be realized if there was a liquidation of this particular corporate asset, rather than cost or other depreciated figure used by the corporation. Essentially, the problem is one of valuation. Should it eventually develop that the appreciated value will not be realized, the result of this miscalculation will be borne by both remaindermen and life tenant in equal proportions. While it is true in some instances the higher book value will result in a decrease in the number of shares received by the life tenant, we do not believe this to be sufficient reason for disregarding the practicalities of the situation; particularly when the appreciated value of the securities is recognized as a valid component of book value by those qualified in the investment field.[7] On the other hand, the question of "earnings" is concerned with a determination of the amount to which the life tenant is entitled for immediate distribution. Should unrealized appreciation of these securities be included in "earnings", it is obvious that the remaindermen alone would bear the loss if

---

[7] The deposition of Mr. Frank Wood, Jr., a trust investment officer of Provident Trust Co. of Philadelphia, in the Stipulation of Facts, states: "4. . . . The yearly revaluation of the securities in the company portfolio by the company represents a reappraisement of part of the company's capital assets. An increase in such valuation is concededly not earnings but it does cause an increase in book value. From the broader view, the resulting figure is closer to the actual or liquidating value of the shares . . ." Mr. Wood also stated that all of the standard investment services examined by him included the unrealized appreciation of the securities in calculating the book or liquidating value of insurance stocks.

this enhanced value was never realized. There is no inconsistency in holding that the enhanced value of these securities may be used on the one hand to determine book value of a corporate asset, while at the same time denying that this increase should be considered as due to the life tenant until this profit is actually realized and in hand.

That portion of the decree of the court below holding the General Electric Company's stock distribution an apportionable event is set aside. As thus modified, the decree is affirmed. Costs on the estate.

———

CONCURRING OPINION BY MR. JUSTICE BELL:

I concur in the Court's decision. For the reasons which are set forth at length in my opinion in *Cunningham Estate*, I would hold that intact value is always book value, in the absence of fraud or bad faith or a material change in the corporation's method of valuing its assets between the date of the trust's acquisition of the stock and the apportionable event.

Mr. Justice MUSMANNO joins in this concurring opinion.