## Berges' Estate

552

554

*Gilfillan, Gilpin & Brehman,* for exceptants.
*H. Eugene Heine,* contra.

SINKLER, J., November 5, 1937.—The exceptions, eight in number, relate to three matters wherein it is charged the auditing judge erred. The chief of these arose from the retention by the trustees of shares of stock in four banks and trust companies, awarded to them by the adjudication upon their executors' account. Less in amount, but more important in principle, is the purchase by the trustees of 20, later an additional 30, shares of the stock of Liberty Title & Trust Company. The third grows out of the failure of the auditing judge to deduct from the amount of his surcharge, in respect of the unauthorized retention of shares of stock in three of the banks and trust companies, the sums realized from the sales of the rights to subscribe to the stock thereof.

First, among the investments awarded to accountants upon the adjudication of their executors' account are the following: 45 shares National Security Bank, afterwards Kensington Security Bank & Trust Company, $19,575; 20 shares Northwestern National Bank, $8,000; 50 shares German-American Title & Trust Company, afterwards Liberty Title & Trust Company, $5,000; 60 shares Integrity Insurance, Trust & Safe Deposit Company, $12,900. The auditing judge surcharged accountants with the loss sustained through retaining these investments and directed that they be replaced with cash at the inventory value. He also surcharged accountants by reason of an assessment which they were required to pay in the amount of $2,000 upon the stock of the Northwestern National Bank. His adjudication contains a careful review of the testimony and of the law. His findings are correct, except as hereinbelow set forth, and there is nothing to add to what has been said in his adjudication, save to emphasize the fact that nowhere in the will is authority

given, explicit or by implication, to retain investments made by testator. Under the authorities cited by the auditing judge, it was incumbent upon the trustees to convert these investments into legal investments for trust funds within a reasonable time and this, he has held, they failed to do.

The record does not disclose any effort on the part of the trustees to determine their authority to retain investments made by testator, either by themselves examining the will or by obtaining the advice of counsel upon the subject.

Second, the investment in shares of the capital stock of the Liberty Title & Trust Company, the auditing judge has held, was not authorized by the will. After quoting the provisions contained in paragraph 6, relating to the investment of the proceeds of the sale of real estate, he recites that it was held in the cases cited by him that the authority to invest in safe securities contemplated legal investments. In Donovan's Estate, 28 D. & C. 93, opinion by Bok, J., concurred in by Van Dusen, acting P. J., and Klein, J., it was held that authority to invest in "safe, sound and substantial securities, according to their best judgment and discretion", without confining the trustees to "technical legal securities" or "what are technically known as legal investments", authorized them to invest in suitable common and preferred stocks. From this opinion Stearne and Sinkler, JJ., dissented, being of the opinion that, the word "securities" having both a loose and colloquial as well as an exact and technical meaning, when used to confer authority of investment the term must be construed in its accurate sense and that "securities" do not include shares of common stock as a class. An appeal was upheld, the Supreme Court holding that this court had no jurisdiction to enter a declaratory judgment, for the reasons stated in the opinion of the court by Justice Linn.

As to the authority in the present case, the sixth paragraph contains a power of sale of real estate in an elabo-

rate form. It confers power to execute "proper deed or deeds, conveyances or assurances in the law to be duly executed, acknowledged and perfected to grant, convey and assure the same", without liability on the part of the purchaser to see to the application of the purchase money. The paragraph concludes: ". . . and the moneys arising from such sale or sales to be invested in some safe securities at interest and to be held in trust for the same uses and purposes above set forth with respect to said premises." The power of investment relates only to the proceeds of sale of real estate whereof decedent died possessed. Herein is the only direction concerning the investment of the trust estate.

The adjudication quotes in part as follows: ". . . same safe securities." In the briefs before us "some" is used at times, and "same" at others. In the original will the word is undoubtedly "some." The term employed has no particular significance. The question to be determined is whether the term "safe securities at interest", construed in its accurate sense, includes common stocks as a class. The answer is in the negative. "Safe, sound and substantial securities", the phrase used in the will construed in Donovan's Estate, supra, is, in effect, the same as that used in the present will, "safe securities." "Sound" and "substantial", while etymologically of different origin from "safe", are synonyms for that term. Whether or not authority to invest in "safe securities" empowers the trustee to invest in shares of common stock as a class, "at interest" precludes the conclusion that the trustees have the authority in the present case. While "interest" may be used loosely to denote income, in its accurate sense it designates income derived from a debt or obligation. Ownership of shares of common stock creates the status of a part owner in the corporate property, and the income derived therefrom is in the form of dividends. There is no covenant for the payment thereof, as in the case of an obligation bearing interest. Whether power to invest in "safe securities at interest" authorizes

the investment in other than legal investments for trust purposes, it clearly does not authorize investment in shares of common stock.

The account contains two items of subscription to, respectively, 20 and 30 shares of Liberty Title & Trust Company stock. Evidently this constituted the exercise of rights to subscribe to stock which arose by virtue of the original holding by the trustees. The transaction is no different than if the trustees had bought from the trust company stock which had been issued and repurchased by the company. In either case the transaction involves the purchase by the trust estate of stock from the company, held in its corporate capacity, and in either case the transaction is voidable. In Tracy et al. v. Central Trust Co., 327 Pa. 77, Justice Schaffer says: ". . . a trustee violates his duty to the trust estate if he sells to himself as trustee property which he individually owns." The purchase by a trustee in his individual capacity of an asset belonging to his trust estate is voidable because there is no indefeasible divestiture of the title. For the same reason, if a trustee sell his individual property to his trust estate, the transaction is voidable. In the present case, the fact that the trustee dealing with itself was not the sole trustee does not affect the application of the rule.

Section 1011 of the Banking Code of May 15, 1933, P. L. 624, enacts that, except as therein specified, a bank or trust company shall not be the purchaser or holder of any of its shares for its own account unless such purchase shall be necessary to prevent loss upon a debt previously contracted in good faith. No such element exists in the present case. While the present cotrustee bought the stock in its capacity of trustee, the purchase violated the spirit of the act. The trust company may not do indirectly, as trustee, what it is prohibited from doing directly in its corporate capacity.

The third question presents the following facts: Accountants charge themselves in respect of holdings of

shares of stock in four banks and trust companies, awarded to them by the adjudication upon their account as executors. There accrued rights to subscribe to additional stock by reason of the holdings so awarded, through an increase in capital of each of the companies. In respect of one holding, to wit, shares of the Liberty Title & Trust Company, the rights were exercised and this transaction is the subject of our decision hereinabove. As to the remaining three, the rights were sold and accountants charged themselves in their principal account with the amounts received.

At the audit the guardian ad litem objected to the allocation to principal of the proceeds of sale of these rights to subscribe. The auditing judge held that, inasmuch as the life tenant had made no objection thereto, the guardian ad litem had no standing to object to the amount being treated as principal. By reason of this finding by the auditing judge, the allocation to principal of the proceeds of sale in question remained unchanged. No exceptions have been filed to this finding. The question is not before us whether the proceeds of sale of the stock rights should be allocated to principal or income.

As has been related, the auditing judge surcharged accountants by reason of the unauthorized retention of the holdings of stock in the four banks and trust companies awarded to them. Accountants asked that there be deducted from the surcharge the sums realized from the sale of the rights to subscribe to additional stock in three of the companies. This deduction was allowed with respect of the holding in one of the companies, to wit, the Northwestern National Bank, but was not allowed in respect of the holdings in the two remaining companies. We have to determine whether the auditing judge correctly surcharged accountants with the full inventory value of the two holdings in question, or whether there should be deducted from the surcharge the amount realized from the sale of these rights. In our opinion, he erred. The right to subscribe to additional stock was an

incident of ownership of the stock held by the trust estate: Veech's Estate, 74 Pa. Superior Ct. 373. ". . . stock rights . . . are a species of stock": Waterhouse's Estate, 308 Pa. 422. The situation is no different than if in each case a part of the original holding had been sold.

Shorn of a valuable attribute, the investment declined in worth to a like degree. The decrease was offset by the increase in the corpus through the receipt of the sale price of the rights. Therefore, the surcharge imposed by the auditing judge by reason of the unauthorized retention of these two holdings must be reduced by the amount realized from the sale of the rights to subscribe.

The exceptions relating to the proceeds from the sale of rights to subscribe are sustained, and the surcharge is reduced to the extent of the amounts realized from such rights. All other exceptions are dismissed. The adjudication, as modified, is confirmed absolutely.