## Franklin Estate

*Waters, Cooper & Gallagher* and *Pepper, Bodine, Frick, Scheetz & Hamilton,* for accountants.

*Raymond Pearlstine,* p. p., guardian ad litem.

TAXIS, P. J., July 18, 1958.—The account of Girard Trust Corn Exchange Bank, formerly known as Girard Trust Company, Walter S. Franklin and John Harris Stephens, trustees for Grace Franklin Franks, Mary Grace Black Stephens, Thelma Franklin Black Stowe and Dorothy Franks Sellers, was examined and audited by the court on May 19, 1958 . . .

The reason or purpose of the filing of the account now before the court is to secure a judicial construction of paragraph 6 (f) of the will.

Lillian Grace Franklin died on September 26, 1946, leaving a will dated August 29, 1943, and codicil thereto dated February 23, 1945, and December 29, 1945.

After making allowances for certain specific bequests, testatrix left the residue of her estate in trust, to pay the income therefrom in quarterly installments to her daughter, Grace Franklin Franks, and her granddaughters, Mary Grace Black Stephens, Thelma Franklin Black Stowe and Dorothy Franks Sellers, for their respective lives. Upon the death of Grace Franklin Franks her share of income is to be divided and paid unto testatrix' three granddaughters in equal shares for their respective lives, and upon the death of any of the granddaughters leaving children or issue surviving them, then the trustee is directed to pay the share of principal from which the granddaughter was receiving income to her surviving children and the surviving issue of any deceased children per stirpes.

Raymond Pearlstine, Esq., was appointed guardian ad litem for minor children and trustee ad litem for unborn and unascertained interests and has filed a helpful report on behalf of the remaindermen.

Paragraph 6 (f) of the will provides as follows:

"I direct that *extraordinary dividends declared upon corporate stock held in any trust hereunder,*

*whether payable in cash, stock, rights to subscribe to stock of the issue or another corporation, or otherwise,* shall be treated as income for the trust estate; and all *profits realized from corporate stock either upon its sale or upon the sale or dissolution of the issuing corporation or otherwise* shall be treated as principal of the trust estate." (Italics supplied.)

During the course of the administration of this trust the trustees have received certain stock dividends, stock splits and rights to subscribe to stock. The facts regarding these corporate distributions are the subject of a stipulation between counsel for the parties which provides as follows:

"1. *Atlantic Refining Company Stock.* In 1951 the Atlantic Refining Company paid out a 20% stock dividend. This is the only stock dividend received on this stock during the period of this account, and is the first stock dividend paid by the Company since 1922.

"2. *Monsanto Chemical Company Stock.* Two percent stock dividends have been received on this stock in 1955, 1956 and 1957. The stock dividend received in December, 1955, was the first such dividend since the stock was purchased by the trustees in May, 1950.

"3. *International Business Machines Corporation Stock and Rights.* During the 12 post-war years, stock dividends in I.B.M. stock have been received at irregular intervals and in varying amounts. There were 5% stock dividends in 1949, 1950, 1951, 1952 and 1953. There were 2½% stock dividends in 1954 and 1956. There were no stock dividends in 1946, 1947, 1948, 1955 and 1957. Shares of I.B.M. common stock were purchased by the trustees in July, 1950 after the stock dividend of that year.

"In addition to the stock dividends noted above, 62 rights to subscribe to the stock of the *International Business Machines Corporation* were received in 1957. Thirty of these rights were exercised. Thirty-two

rights were sold and the proceeds credited to principal. These are the only rights received since the stock was purchased in 1950 and are the only rights issued by the Company since 1925.

"4. *Texas Company stock.* A 2% stock dividend was received on Texas Company common stock in December, 1957. This was the first and only stock dividend received on this stock during the period of the account."

At bar the parties requested that the problems raised by the receipt of the stock splits be reserved and not be determined by this adjudication. They suggest that Cunningham Estate and Harvey Estate, 13 D. & C. 2d 63, which are pending before the Supreme Court on appeal, might announce principles which would affect the apportionment problems raised by receipt of these stock splits. This adjudication therefore expressly refrains from a determination of all problems relating to stock splits.

The issue now before the court is simply whether testatrix expressed an intent that stock dividends, as heretofore described, be treated as income. The life tenants contend that testatrix' direction in paragraph 6(*f*) that extraordinary dividends payable in stock be treated as income constitutes an intent that all stock dividends be treated as income. Section 2 of the Uniform Principal and Income Act of May 3, 1945, P. L. 416, 20 PS §3471, in effect at the time of testatrix' death and applicable to this case, provides that a testator may direct ". . . the manner of ascertainment of income and principal and the apportionment of receipts and expenses . . ." and when he so provides ". . . such provisions and direction, where not otherwise contrary to law, shall control, notwithstanding this act."

The remaindermen, on the other hand, contend that the direction in paragraph 6(*f*) applies only to extraordinary stock dividends as opposed to ordinary stock

dividends, that the stock dividends received are not extraordinary dividends, and that therefore, in absence of a direction by testatrix as to the apportionment of such receipts, the provisions of the Uniform Principal and Income Act of 1945, supra, apply. More particularly that section 5(1) of that act decides this case since it proved that: "All dividends on shares of a corporation forming a part of the principal which are payable in the shares of the corporation shall be deemed principal."

A careful reading of the will and a consideration of the laws in effect at both the time of execution of the will and at the death of testatrix compel the conclusion that testatrix, in making her own rule of apportionment, intended that all stock dividends be treated as income, that testatrix considered all stock dividends to be extraordinary dividends. In Nirdlinger's Estate, 290 Pa. 457, Justice Kephart discussed the nature of corporate dividends. At page 461 he said.

"Earnings of a corporation may be divided into gross and net, and the net earnings may again be divided into (1) that portion applicable to a usual or customary dividend at a fixed per cent or sum per share, paid at regular periods, and (2) extraordinary dividends which may assume an unusual form and amount, paid at irregular intervals from accumulated surplus or earnings. Both kinds of dividends must, of course, be declared out of earnings or profits.

"(A) Where the corporation distributes its earnings in dividends.

"1. It is the general rule as to ordinary dividends, well established in Pennsylvania, that when the trustee receives, after the creation of the trust, money as earnings of the estate or income, its source being an ordinary dividend paid by a corporation, it belongs to the life tenants, regardless of how soon thereafter

it is declared. The reason given for this rule is that dividends, unlike interest on bonds, are not earned *de die ad diem*, and, consequently, are not, in the absence of unusual circumstances, apportionable.

"2. When the earnings have been permitted to accumulate by a corporation and their proceeds invested in corporate property, in working capital, or retained as cash or its equivalent, *and an extraordinary dividend is declared in stock or cash*, the respective rights of life tenants and remaindermen have been variously adjudicated." (Italics supplied.)

It should be moted that when Justice Kephart referred to ordinary dividends he considered them to be *money* received by the trustees. When, however, referring to stock received by the trustees he described the distribution as being an extraordinary dividend. He said:

"The income from the estate, unless otherwise determined by will, is distributed as follows:

"[a] Ordinary cash or script dividends coming to it belong to the life tenants regardless of how soon after testator's death they are declared by the company whose stock is held in the corpus. They are not, in the absence of unusual circumstances, apportionable between life tenants and remaindermen.

"[b] Extraordinary dividends, *commonly called stock dividends*, are distributed and apportioned as follows. The presumption is that an extraordinary stock dividend is from earnings and belongs to the life tenant": Waterhouse's Estate, 308 Pa. 422, 428. (Italics supplied.)

It is apparent from the above excerpts that when Justice Kephart was speaking of stock dividends, he considered these to be extraordinary dividends and so described and defined them.

Furthermore on August 29, 1943, when this testatrix wrote her will and on December 26, 1946, when she

died, the Act of May 25, 1939, P. L. 201, sec. 1, 20 PS §3252, was in effect. This act provided:

"In wills, deeds of trust, or other instruments creating trusts, becoming effective hereafter, *provisions directing that extraordinary dividends* declared upon corporate stock held in trust, whether payable in cash, stock, rights to subscribe to stock of the issuing or another corporation, or otherwise, or directing that profits realized from such stock, either upon its sale or upon the sale or dissolution of the issuing corporation, or otherwise, *shall be treated, in whole or in part, either as principal or income, shall be valid and enforceable.*"

A comparison of the language of paragraph 6(*f*) of the will with that of the Act of 1939 makes it apparent that testatrix adopted the language of the act. It is also apparent that the legislature, like the Supreme Court, when speaking of stock dividends, described them as being extraordinary dividends.

Turning to the will itself and examining it as a whole, it is clear that the life tenants are the primary objects of testatrix' bounty. The life tenants were testatrix' daughter and three granddaughters whom she knew and identified by name in her will. Conversely, the remainder interests will remain unascertainable until the termination of this trust. By paragraph 6(*f*) testatrix attempted to establish a rule of apportionment that was both practical in application and equitable between life tenants and remaindermen. In doing so she directed that all extraordinary dividends be treated as income and all profits from the sale of corporate stock be treated as principal. It would be extremely improbable that testatrix intended to exclude the natural objects of her bounty, the life tenants, from proceeds from the sale of stock as well as all stock dividends. It is even less likely that if the distinction

did exist in the mind of testatrix between ordinary and extraordinary stock dividends, that she intended to give the favored objects of her bounty only the extraordinary dividends and to exclude them from the ordinary variety.

Taking into consideration the natural preference testatrix is presumed to have for the life tenant as opposed to the remaindermen, and reading the will of testatrix as a whole, it is apparent that in directing that all extraordinary dividends be treated as income, this testatrix considered all stock dividends to be extraordinary dividends.

In accordance with the provisions of paragraph 6 (*f*) of this will, all stock dividends and stock rights referred to in the stipulation are hereby awarded to the life tenants, as aforesaid . . .

And now, July 18, 1958, this adjudication is confirmed nisi.